No. 28,530.

W. L. JOHNSON, *Appellee,* v. MARGARET COFFIN et al., *Appellants;* TREVETT, MATTIS & BAKER COMPANY, *Appellee.*

(273 Pac. 486.)

Opinion filed January 12, 1929.

*E. R. Sloan,* of Holton, for the appellants.

*Hugo Orlopp,* of Atchison, *A. E. Crane, B. F. Messick* and *A. Harry Crane,* all of Topeka, for appellee W. L. Johnson.

*Samuel Rinaker* and *John W. Delehant,* both of Beatrice, Neb., for appellee Trevett, Mattis & Baker Company.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a mortgage foreclosure proceeding in which the court adjudged the existence and priority of certain liens upon a tract of land and also determined the ownership of the legal title held to be subject to adjudged liens and also determined a claimed right of subrogation. The subrogation claimed by the appellants was denied, and they have appealed.

Findings of fact were made, which are not in dispute, from which the following condensed statement of the transactions of the parties and of the mortgages and transfers of the property involved, has been taken. The land foreclosed was purchased by Clarence Marshall on January 12, 1923, and he continued to own it until December 29, 1925. On September 27, 1923, Marshall and wife executed a mortgage on the land to the Rafter Farm Mortgage Company to secure the payment of a loan for $2,000, which was recorded December 24, 1923. This mortgage was duly assigned to Kate Hoover and John Hoover, who remained the owners of it until it was paid on December 10, 1925. It was released of record on September 15, 1925. On December 1, 1923, the Marshalls executed another mortgage on the land to the Rafter Farm Mortgage Company for $1,050 which was recorded on December 24, 1923. Another mortgage which is spoken of as a commission mortgage was executed to the same mortgage company on December 1, 1923, which was placed of record March 19, 1925. It was assigned to one Raebuck, and was subsequently paid. The Marshalls were indebted to the State Bank of Holton and on February 19, 1925, they executed another mortgage on the land to that bank to secure a note for $2,000, which was. filed for record on March 13, 1925. On May 18, 1925, the Marshalls executed a mortgage on the land to Minnie B. Haas to secure a promissory note for $4,000, and this mortgage was recorded on May 19, 1925. After it was executed it was delivered to P. M. Haas, the husband of Minnie B. Haas, a loan agent of Holton, to negotiate it for the Marshalls, who desired to use the proceeds to pay the mortgages mentioned that were given to the Rafter Farm Mortgage Company, and also to reduce their indebtedness to the State Bank of Holton. P. M. Haas negotiated a sale of the Minnie B. Haas mortgage to W. L. Johnson, of Atchison. The note was indorsed and transferred by Minnie B. Haas without recourse, and an assignment of the mortgage, and these were forwarded to Johnson by P. M. Haas, accompanied by an abstract of title to the mortgaged land. The abstract made and certified by P. M. Haas showed the unreleased Rafter mortgage of $2,000, and it was represented to Johnson that the $4,000 was being negotiated for the purpose of paying off that mortgage. The abstract did not show the other Rafter mortgages, one for $1,050, and the other for $305, nor did it set out the $2,000 mortgage given to the State Bank

of Holton. The $4,000 note and mortgage was purchased by Johnson in good faith, believing that when the $2,000 Rafter mortgage was paid he would have a first lien upon the land. He made no examination of the records, but relied on the abstracts sent with the mortgage. He turned over his checks to Haas for $6,076 in payment of the $4,000 mortgage, and the balance of it in payment of the $2,000 Rafter mortgage, and directed P. M. Haas to pay the $2,000 mortgage and have it released, and also to place the assignment of the $4,000 mortgage to him on the records, and to repost the abstract and bring it up to date. Haas kept the mortgage and abstract in his possession until in November, 1925. When he returned the same to Johnson it showed a record of the assignment of the Johnson mortgage as of September 9, 1925, and a reposting of the abstract up to September 15, 1925. On the abstract was a note in these words:

"On margin of page 7 of book 86 is the following release. 'Received of Clarence Marshall, the within-named mortgagor, the sum of $4,000 in full satisfaction of the within mortgage. September 10, 1925. Kate Hoover, John Hoover. Written on the original and recorded on margin of record by register of deeds, September 15, 1925.' "

This entry was false and P. M. Haas paid no part of the money received from Johnson to the Marshalls, nor did they receive any consideration for the note and mortgage, nor did they know of the assignment of the same. On December 29 the Marshalls executed a deed conveying the land to the State Bank of Holton, which recited that it was subject to two mortgages for $3,050, and one for $2,000. The deed was executed by the Marshalls because of their inability to realize any money on the Minnie B. Haas mortgage which they had executed and which had been recorded on May 19, 1925. The deed was accepted by the State Bank of Holton in payment of the $2,000 note and mortgage which it held. At the time of this transfer the bank was informed by Marshall that he had received no money on the $4,000 mortgage, and was informed, too, that the release of the mortgage would be procured from Johnson so that it would not constitute a lien on the land, and it bought the land in the belief that this release would be obtained. The deed was filed for record on January 12, 1926. A purported release by Johnson of the $4,000 mortgage was obtained from P. M. Haas and was filed by the bank for record on January 21, 1926. It purported to have been signed by Johnson and acknowledged before P. M. Haas as notary public

on January 12, 1926. Johnson, however, did not sign or acknowledge a release, did not authorize its execution and had no knowledge of the false release. It was delivered by P. M. Haas to the bank prior to January 21, 1926, which delivered it to the register of deeds on that day, and did so in the belief that it was genuine. From and after the execution of the deed the officers of the bank had no intention to hold the $2,000 mortgage formerly held by the bank as a lien on the land. On the other hand, the bank on March 17, 1926, contracted to sell the land to the defendants, Warner Coffin and his wife, for $7,800. One thousand dollars of the amount was paid in cash. The Coffins assumed and agreed to pay the mortgages for $3,050, including the commission mortgage and the interest on these from March 1, 1926, and also to make payments thereon of $1,000 on March 1, 1927, $1,000 on March 1, 1928, and $1,750 on March 1, 1929, these deferred payments to be evidenced by promissory notes bearing interest at eight per cent from March 17, 1926. Possession was to be given to the Coffins immediately upon the making of the contract. It was agreed that upon compliance with the terms of the contract the bank would execute a warranty deed, and it was stipulated that if the Coffins failed in making payments when due they would forfeit all rights in the land. About April 14, 1926, the Coffins made full payment for the land and in doing so relied on the records in the office of the register of deeds, and the bank on the same day executed and delivered a warranty deed to them for the land. On April 14, 1926, the Marshall mortgage to the bank was released of record. On April 14, 1926, the Coffins applied for a loan of $3,500 on the land to the Trevett, Mattis & Baker Company, to raise money to pay the Rafter mortgages of $2,000, $1,050 and $305. That company examined the records to ascertain the condition of the title and found that the State Bank of Holton was the owner of the land subject to the Rafter mortgages mentioned, and the Coffins agreed to give the Trevett, Mattis & Baker Company a first lien on the premises in the sum of $3,500, and concurrently with the recording of the deed from the State Bank their mortgage was recorded and the proceeds of the loan were paid to the Rafter mortgage company for $2,000 and the one for $1,050 with the accrued interest of $78 thereon. Also, a balance due on the commission mortgage, to wit $198.50, and the balance of $158.75 was paid to Coffin, who turned it over to the State Bank in payment of an indebtedness.

The State Bank of Holton became and was found to have been

insolvent on March 10, 1927. As conclusions of law the court ruled that the defendant, Coffin, is the owner of the land, that the Trevett, Mattis & Baker Company is subrogated to the rights of the Rafter Farm Mortgage Company and the assignees of its mortgages in the amount paid, to procure the release of their mortgages and that they have a valid first lien on the land for $3,326.50; further that Johnson, the plaintiff, has a second lien on the land for $4,487.31, with the interest thereon, and that they are entitled to a foreclosure of their lien subject to the first lien of the Trevett, Mattis & Baker Company for $3,326.50, which company also has a valid third lien on the land for $173.50, and the interest thereon. Judgment was accordingly entered. On the facts found the Coffins moved the court to adjudge that they be subrogated to the rights of the State Bank of Holton, and they asked that the release of the $2,000 mortgage formerly owned by it be set aside and that they be given a second lien for $2,000 and interest less the sum of $173.50, and that their lien be foreclosed subject to the lien of the Trevett, Mattis & Baker Company, but their motion was denied by the court. It is contended that the bank which purchased the land to settle indebtedness of Marshall to the bank, and which released its mortgage of record, acted in good faith in releasing it, believing that the release of the Johnson mortgage would be procured by Haas, and not knowing of the fraud of Haas, has a better claim than Johnson, and that its grantee is entitled to subrogation to the extent of the released mortgage of the bank for $2,000. That mortgage, as we have seen, was actually paid by the mortgage debtor. The debt represented by a note was paid and canceled on December 29, 1925, and a release of the mortgage was placed on record. The Marshalls from whom the land was purchased by the bank owed the mortgage debt, and how can there be subrogation where the party owing the debt pays the same? When the Marshalls paid the note, the debt and lien were discharged, and it appears that the entries made in the books of the bank showed that the note and mortgage were in fact canceled. More than that the court found that the bank had no intention to hold the mortgage as a lien on the land. It is true that prior to the payment of the debt in the purchase of the land the bank's mortgage was prior and superior to the one held by Johnson, but the bank, instead of providing for the continuance of the mortgage lien to meet contingencies that might arise, chose to obtain and accept payment of the debt and mortgage, and when

these were paid by the debtor and payment accepted the land was freed of that lien. In *Spire v. Spire*, 104 Kan. 501, 180 Pac. 209, it was held that the maker of a note who was surety for his comaker and who after payment of the note asked to be subrogated to chattel security held by the payee, was not entitled to subrogation. In the opinion it was said:

"Being a maker, who was primarily and absolutely bound to pay the notes according to their tenor, Ambrose Spire was, as between himself and the payee, a principal debtor, and payment by his administrator discharged the notes. (Negotiable-instruments Law, § 126, Gen. Stat. 1915, § 6647.) Discharge of the notes discharged the lien of the mortgage. It was then the duty of the mortgagee to enter a release of the mortgage on the record. The administrator could do nothing to keep the mortgage alive, and nothing remained on which equitable assignment or equitable subrogation could operate." (p. 502.)

The bank was not in a position to claim subrogation and neither were the Coffins to whom the land was sold. In *Kuhn v. Bank*, 74 Kan. 456; 87 Pac. 551, it was said: "We have not been cited to any authority, nor have we found any, supporting the proposition that an independent purchaser of real property encumbered with liens who has no interest to protect therein, and no other equitable claim, can assume the payment and pay such lien or liens as he may choose and claim subrogation as against all inferior liens," except certain cases which it is said are not in accord with the weight of authority. The Coffins were independent purchasers and at the time of the purchase had no right to be protected upon learning of the fraud of Haas, who, it appears, committed suicide, and further that the release of the Johnson mortgage was forged, they had the option to repudiate the contract of sale made with the bank and institute an action to rescind it, or to join with the bank in seeking relief on the ground of the fraud of Haas and attempt to obtain a revival of the mortgage lien which the bank had canceled and released. In following the latter course they in effect ratified the course taken by the bank and stand in its shoes so far as a right to subrogation is concerned. They did not pay or assume the payment of the bank mortgage that was paid by the Marshalls when the land was sold to the bank, payment being accepted from them as part of the purchase price. There was no bank mortgage nor lien under it when the Coffins purchased and came into the ownership of the land. The Marshalls had satisfied that debt and lien. The appellants say that plaintiff

should not be allowed to profit by fraud. No fraud was committed by plaintiff. The Minnie B. Haas note and mortgage purchased by plaintiff was duly executed by the owners of the land and placed in the hands of P. M. Haas, their agent, for negotiation and sale. These were transferred to plaintiff, who paid full consideration for them to the agent of the mortgagors, and the mortgage was duly recorded. The fact that Johnson believed he was obtaining a first lien and that misrepresentations had been made to him, and that there were other liens superior to his own, was in no sense fraudulent on his part. The fraud was committed by Haas in not accounting for the proceeds of the mortgage sold to the plaintiff and in delivering a fraudulent release to the bank, and the bank and the Coffins are seeking to avail themselves of the fraud of Haas by the attempt to revive a lien which had been paid and discharged.

We conclude that under the facts neither the bank nor the Coffins were entitled to the subrogation claimed. We cite the following additional cases which bear more or less on the question involved: *Hubbard v. LeBarron,* 110 Ia. 443; *Stastny v. Pease,* 124 Ia. 587; *Avon-by-the-Sea, &c., Co. v. McDowell,* 71 N. J. Eq. 116; *Kahn v. McConnell et al.,* 37 Okla. 219; *Shirk, Executor, v. Whitten et al.,* 131 Ind. 455; *McDowell v. Jones Lumber Company,* 42 Tex. Civ. App. 260; *Witt v. Rice,* 90 Ia. 451; *Campbell v. Hamilton,* (Tenn. Ch.) 39 S. W. 895.

It results that the judgment must be and is affirmed.