No. 31,605

Carl E. Weeks, *Appellant*, v. Jacob Berschauer and Katie Berschauer, His Wife, Jacob Schneider and His Wife, R. C. Buxton and Anna Buxton, His Wife, and Producers and Refiners Corporation, *Appellees*.

(36 P. 2d 81.)

Opinion filed October 6, 1934.

*Louis R. Gates,* of Kansas City, and *Donald H. Latshaw,* of Kansas City, Mo., for the appellant.

*Andrew F. Schoeppel,* of Ness City, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to cancel a contract and deed which purported to convey plaintiff's interest in certain lands in Trego county and to quiet his claim of title thereto.

It appears that in 1923 the late Lee C. Weeks was the owner of 800 acres of land in Trego county. In September of that year he mortgaged the land to the Kansas City Joint Stock Land Bank to secure a loan of $11,500, evidenced by a promissory note payable in 66 semiannual instalments.

On November 20, 1924, Lee C. Weeks died testate, leaving a widow, Jessie Weeks, and five children, one of whom is this plaintiff. By the terms of his will all the testator's property was bequeathed to Jessie, "to be hers absolutely so long as she remains my widow, [and] at the expiration of such time . . . the residue [shall] be equally distributed to my heirs, each to receive an equal portion."

In 1927 Jessie Weeks mortgaged her interest in the 800 acres to W. F. Baer to secure her promissory note to him for $1,800.

At the time of his father's death this plaintiff was a minor and did not attain his majority until October 4, 1929. However, during his minority and for some reason not disclosed by the record, he and his mother executed to somebody two promissory notes for $350 and $550, which were acquired by the Trego County State Bank. On December 28, 1927, that bank commenced suit in the county court of Trego county to recover on these two notes and caused an attachment to be issued and levied on the interests of the defendant mother and minor son in the 800 acres. A guardian *ad litem* was appointed for the minor, and an answer was filed in his behalf. Judgment was entered in favor of the bank on March 22, 1928, against this plaintiff and his mother for $992.97 and costs, and their interests in the land were ordered sold. Accordingly order of sale was issued on April 14, 1928, and the sheriff's return, dated May 21, 1928, recited that he had sold their interests to J. J. [Jacob] Berschauer for $710.88. This sale was confirmed, and a certificate of purchase dated May 23, 1928, was executed to Berschauer entitling him to a deed in 18 months unless the property were redeemed in the interval. Pursuant thereto a sheriff's deed was executed to him on November 27, 1931.

On January 20, 1928, Jessie Weeks and her five children made a written agreement with R. C. Buxton to exchange this muchencumbered 800 acres, which was also burdened with delinquent taxes, for a certain duplex property in Kansas City, Mo., which was itself encumbered with a deed of trust for $6,000 and past-due interest and taxes. This contract provided that the instruments evidencing this exchange of properties should be made through the First State Bank of Ransom. The plaintiff, Carl E. Weeks, signed this contract and joined with his mother and his brothers and sister in executing the deed carrying this contract into effect; but

he was then only 19 years of age and Buxton was aware of that fact.

At the time the contract of exchange of properties was made, Buxton's Kansas City property stood in the name of one Hinshaw and wife. Hinshaw had agreed to exchange the Kansas City property to Buxton for a half section of mortgaged land in Ness county. Hinshaw and wife executed a warranty deed to the Kansas City property in blank and sent it to the bank in Ransom, with instructions to deliver it to Buxton. On March 13, 1928, Jessie Weeks and her five children authorized the bank at Ransom to deliver the deed to Chas. E. Rutherford, a Kansas City real-estate dealer.

On March 20, 1928, Jessie Weeks made a contract with the owner of a half section of mortgaged land in Otero county, Colorado, to exchange the Kansas City duplex property therefor, and directed Rutherford to surrender the deed, abstract and insurance policy on the Kansas City duplex to the Colorado party with whom this latest exchange of properties had been effected. In the deed conveying the interest to the Colorado land the name of the grantee was omitted, and the plaintiff, Carl E. Weeks, did not participate in the Colorado land trade nor consent thereto.

On February 3, 1928, W. F. Baer, who held the mortgage on Jessie Weeks' interest in the 800 acres of Trego county land, redeemed the land from tax sale for the delinquent taxes of 1926, $239.64. He also paid the 1927 taxes, $233.89. About the same time Baer paid the overdue instalments of principal and interest on the original mortgage indebtedness covering the 800 acres, $402.-50, held by the Kansas City Joint Stock Land Bank.

On February 8, 1928, Buxton and wife conveyed the 800 acres to Jacob Berschauer, subject to the land bank's first mortgage and subject, also, to the mortgage executed by Jessie Weeks in favor of W. F. Baer. Berschauer went into possession in August, 1928, and later paid off the first mortgage and acquired the second mortgage by assignment.

The foregoing is an abridged summary of the most material of the trial court's exhaustive findings of fact. Other details are that in 1929 Berschauer executed an oil and gas lease on part of the property, and in 1930 he made an abortive contract to sell the 800 acres on the "wheat plan," but these facts are of no present importance.

On March 19, 1931, this plaintiff, having attained his majority

on October 4, 1929, served notice on the Trego County State Bank that he disaffirmed the execution of the notes for $350 and $550 which had been the basis of its action against him and his mother, and in which the Trego county land had been attached and sold to Berschauer. On the same day he instituted proceedings in the county court to open the judgment rendered against him on March 22, 1928. No notice of these proceedings was given to Berschauer. The county court vacated its judgment and allowed this plaintiff to file an answer; and eventually, on September 14, 1931, judgment was rendered in his favor against the Trego County State Bank, which had instituted that suit against him and his mother in 1927 and on which the vacated judgment of March 22, 1928, had been rendered.

On August 22, 1931, plaintiff disaffirmed the contract of January 20, 1928, in which he had joined with his mother, brothers and sister to exchange the 800 acres in Trego county for the Kansas City duplex, and notified Berschauer, Buxton, the Ransom bank and W. F. Baer to that effect.

Jessie Weeks, to whom the 800 acres was devised "during her widowhood," never remarried, and in 1932, when this action was tried, she was 64 years old. Any other material facts which may require attention will be noted as we proceed.

Judgment was entered in favor of Berschauer, and his title was quieted against plaintiff.

Plaintiff appeals, urging various points of law and fact which, he contends, should have resulted in a judgment in his favor. The first proposition he urges is that when he became of age no property remained in his possession or under his control which he had received in consideration for the conveyance of his interest in the 800 acres. He directs attention to the fact that the trial court found that he did not participate in the exchange of the Kansas City duplex for the Colorado land. However, that merely means that he still has an interest in the Kansas City duplex property, and he made no tender of that interest to Berschauer nor to Buxton, from whom he received it. It is both elementary and statutory law that on disaffirmance of a contract on the excuse of nonage when made, whatever remains in the hands of the disaffirming party must be restored to the person from whom he received it or from whom he seeks a return of the consideration he parted with at the time the disaffirmed contract was made. (R. S. 38-102; 14 R. C. L. 238;

31 C. J. 1069, 1071; *Whitman v. Allen,* 123 Me. 1, 36 A. L. R. 776 and note.)

Passing that point, it should be apparent that in fairness and justice to the defendant Berschauer he could not be stripped of his interest without reimbursement for the heavy sums of money lawfully expended by him and as an equitable assignee of those through whom he has acquired his several interests in the property. He bought the interest of plaintiff's mother, as well as the remainder interest of plaintiff, at the execution sale to satisfy the judgment of the Trego County State Bank. True, the trial court found that Berschauer knew at the time of that execution sale that plaintiff was a minor. But none the less he had a clear right to purchase the minor's interest, since the latter was represented by a guardian *ad litem* in the proceedings leading to the judgment and pursuant to which the execution sale was had. Appellant contends that on the application of plaintiff to open the judgment entered against him in the action brought by the Trego County State Bank, pursuant to which Berschauer bought the interests of plaintiff and his mother at the execution sale, Berschauer was not an adverse party under R. S. 60-2530 or 60-3010, Civil Code, §§ 83, 599, so as to entitle him to notice. If he was not, who was the adverse party? Before prosecuting the proceeding to open the judgment, plaintiff made his peace with the Trego County State Bank by a written agreement and stipulation that if the judgment were opened he would not ask for the imposition of any liability against the bank; and that left nobody in the case, other than Berschauer, who had any concern whether the judgment were opened or not. The bank had realized its due against plaintiff, thanks to the fact that Berschauer had paid to the sheriff for its benefit the sum of $710.88 for whatever he got at the execution sale. Apparently it was plaintiff's theory at the trial below that Berschauer got nothing for his bargain.

In *Harrigan v. Gilchrist,* 121 Wis. 127, 207, it was said:

"The adverse party does not necessarily include merely the opposite party appearing upon the record. A person may be appellant or an adverse party within the meaning of the statute and his name not appear in the litigation resulting in the decision at all. If he has a substantial interest adverse to the decision, that is all that is required for an appellant, whether it be direct or by privity created between himself and the person against whom the decision was rendered by reason of succeeding to his rights after the decision or subsequent to the commencement of the action." (Citations.)

In *State, ex rel. Cook, v. Commissioners,* 29 S. D. 358, 374, it was said:

"Who are 'adverse' parties in a special proceeding? We construe the term to embrace any person whose personal or property or other rights may be adversely affected by the operation of the judgment or the final relief sought in the proceedings as well as the court tribunal or officer whose official acts are challenged for lack or excess of jurisdiction." (Citations.)

See, also, Baylies' New Trials and Appeals, 2d ed., 145; 1 Words and Phrases, 2d ser., 132.

Under these authorities and the circumstances of this case this court holds that Berschauer was an adverse party, and that the order of the Trego county court opening the judgment without notice to him was a nullity.

If what we have already said were not sufficient to dispose of this appeal, it ought to be manifest, without multiplicity of words, that plaintiff was in no position to maintain this action until he had tendered to Berschauer the full amount of taxes which he or his assignors of the first and second mortgages had paid, as well as the past-due instalments of principal and interest. It is only when it suits the convenience of the holder of various interests in property that those interests will be regarded as merged. (*Bank v. Bank,* 103 Kan. 865, 176 Pac. 658; *Heston v. Finley,* 118 Kan. 717, 236 Pac. 841.) If it could be successfully contended that Berschauer was not now the owner in fee simple of the property in dispute, he would certainly be the lawful holder of the first and second mortgages, with all the equities pertaining thereto, including the rights of a mortgagee in possession. (Merwin's Equity and Equity Pleading, § 625 *et seq.*) This lawsuit had its inception in the untenable theory which was pursued throughout the trial below that Berschauer had no rights which this plaintiff was bound to respect, while the simplest and most familiar of all legal maxims is that he who seeks equity must do equity. In presenting this appeal counsel for plaintiff now concede that if this case should be reversed Berschauer would be entitled to a lien for whatever equitable rights he has in the property. No such suggestion was made in the trial court, and it would be highly improper for us to tell that court it had committed error on a matter concerning which it was never asked to make a ruling.

In view of this conclusion the other matters urged by appellant call for no discussion. The judgment of the district court was eminently correct, and it is affirmed.