No. 35,782

The Kansas Seventh Day Adventist Conference Association, *Appellee,* v. Laura J. Sidler Williams et al. (Walter E. Hembrow et al.), *Appellants.*

(134 P. 2d 626)

Opinion filed March 6, 1943.

*Paul H. Royer,* of Abilene, argued the cause for the appellants.

*Frank E. Miller,* of Topeka, argued the cause for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action to foreclose a real estate mortgage. Defendants appeal from an order sustaining plaintiff's demurrer to the answer. The question is whether defendants may claim as mortgagees in possession, under a first mortgage or—as the court below held—must be regarded as owners of the land subject to plaintiff's mortgage as a first lien.

On August 20, 1930, Laura Sidler, now Laura Sidler Williams, owner of land in Wallace county, secured a loan of $500 from W. A. Anderson, and gave him her promissory note for that amount secured by mortgage—hereinafter called the first mortgage—upon the land.

On June 20, 1935, Laura Sidler gave her note for $500 to the Seventh Day Adventist Association, appellee here, secured by mortgage—hereinafter called the second mortgage—on the same land.

On October 2, 1935, Laura Sidler executed to W. A. Anderson, in settlement of a debt of $362.93 then due on the note secured by the first mortgage, her warranty deed. Appellee alleges that in addition to canceling the indebtedness Anderson paid her $50 as part of the consideration for the deed. Payment of the $50 was denied in the answer, and the issue being here upon demurrer to the answer, the denial is accepted as true. Upon receipt of the deed in October, 1935, W. A. Anderson went into possession of the land and remained in possession until his death on April 4, 1941. On June 25, 1937—about one year and eight months after he had accepted the deed and gone into possession—Anderson released his mortgage of record.

W. A. Anderson left as his sole heir at law his wife, Ruby Anderson. Following his death some controversy arose over a purported will in which he left his property to his brother, Jesse Anderson. As part of a compromise settlement between Ruby Anderson and Jesse Anderson she executed on September 29, 1941, a quitclaim deed to the land in question—grantee unnamed—which she delivered to him, and he in turn inserted the names of attorneys Hembrow and Royer, the appellants here, as grantees, and delivered the deed to them, in payment for professional services in connection with the controversy over the W. A. Anderson estate.

On April 2, 1942, the Kansas Seventh Day Adventist Association, holder of the original second mortgage, filed this action to foreclose their mortgage, Hembrow and Royer being named, among others, as parties defendant. Subsequent to the filing of this action, on May 1, 1942, Ruby Anderson executed and delivered to Hembrow and Royer an assignment of any right she might have as the sole heir of W. A. Anderson in the note and mortgage given to him by Laura Sidler in August, 1930. In their answer Hembrow and Royer set up the facts hereinbefore recited, and asked the court to find that when W. A. Anderson, holder of the first mortgage, accepted the deed from Laura Sidler, he became a mortgagee in possession and

that he continued as such until his death; that his rights as such mortgagee in possession passed by inheritance to Ruby Anderson; that such rights passed in turn to them by quitclaim deed and by the assignment from Ruby Anderson. Their prayer was that they be adjudged mortgagees in possession and that the plaintiff, the Seventh Day Adventist Association, be given the statutory time in which to redeem the land from them upon payment of $359.33 or be forever barred from asserting any interest in the land. Plaintiff demurred to the answer, the demurrer was sustained, and this appeal followed.

In considering the law here applicable it must first be noted that the action is not between the original holders of the senior and junior mortgages to determine priority between them. Appellants claim as successors in interest through W. A. Anderson, deceased, holder of the first mortgage. Nor were they immediate successors. The answer recited that Ruby Anderson "conveyed the real estate" to appellants. but it is conceded that under the compromise agreement Ruby Anderson conveyed the land by quitclaim deed to Jesse Anderson who in turn conveyed it by quitclaim to appellants. They are accordingly third successors in line from the original first mortgagee. Our issue, however, can best be approached by first considering briefly the principles that would have been pertinent if the original mortgagee were alive and were now contesting priority.

It is a well-established rule of equity that while the transfer to mortgagee of the mortgagor's interest in the property—whether that interest be legal title or equity of redemption—ordinarily operates to effect a merger into ownership, the mortgagee may elect to retain his status as mortgagee and thus keep his lien alive. This arises ordinarily in cases where there are junior lien-holders, whose liens would otherwise be accelerated to senior liens. Whether a merger of the two estates is to take place is primarily a matter of intention on the part of the mortgagee to whom the mortgagor's interest has been conveyed, and this intention may be established by acts or conduct as well as by direct expression of intent. (37 Am. Jur. 429, 430; 41 C. J. 775-777; 19 R. C. L. 484 *et seq.; James V. Williams,* 102 Kan. 231, 233, 169 Pac. 1163; *Shattuck v. Bank,* 63 Kan. 443, 65 Pac. 643.) It has also been said that merger takes place in the absence of intention to keep the lien alive. (41 C. J. 780.) This latter rule, however, is modified by another rule, generally recognized, that at least as between the original lien-holders, the holder of

the senior mortgage will be presumed—in the absence of evidence to the contrary—to have intended, when he received the mortgagor's interest, that which is clearly shown to have been to his interest. (37 Am. Jur. 430; 41 C. J. 779; *Loan Association v. Insurance Co.*, 74 Kan. 272, 277, 86 Pac. 142, and cases there cited; *Chase v. Van Meter*, 140 Ind. 321, 39 N. E. 455; *Walker v. Goodsill*, 54 Mo. App. 631; *Edney v. Jensen*, 116 Neb. 242, 216 N. W. 812.)

It would unduly extend this opinion to review cases dealing with varied facts and circumstances to be considered in arriving at the mortgagee's intent. One such fact frequently considered is cancellation of the debt and release of the mortgage. There is a marked conflict of authority as to whether such release operates to effect a merger and abandonment of the lien. It is said that the weight of authority is that such release of the mortgage does not necessarily effect a merger, though there are many decisions to the contrary. (19 R. C. L. 490, 491; Annotations 39 L. R. A. n. s., 838-840 and footnote 1, p. 838, and note 2, p. 840; 95 A. L. R. 643, *et seq.*) Clearly, however, while release of the mortgage is not conclusive, it is evidentiary in character, on the question of the mortgagee's intent. In many cases the fact that the mortgage was not released has been noted as indicating the mortgagee's intention not to abandon his lien. (37 Am. Jur. 433, 434; 95 A. L. R. 646, 647; *Peterborough Savings Bank v. Pierce*, 54 Neb. 712; *Dunphy v. Riddle et al.*, 86 Ill. 22, 34 N. E. 60; *Burton v. Perry*, 146 Ill. 71, 34 N. E. 60; *York v. Robbins*, [Tex. Com. App.] 255 S. W. 720; *Henningsmeyer v. First State Bank*, [Tex. Civ. App.] 192 S. W. 286.)

In the instant case the record discloses no specific expression on the part of W. A. Anderson to preserve his lien, when he accepted deed from the mortgagor. He went into possession and a year and eight months later, on June 25, 1937—after ample time to determine what was to his interest—released the mortgage of record. Without here determining intent as far as Anderson was concerned, certainly this release would tend to support a finding of merger. Furthermore, there is no evidence relating to the situation when Anderson released the mortgage, from which we could say as a matter of law that it was to his interest still to consider himself a mortgagee in possession rather than as an owner, subject to appellee's mortgage. In addition to the above rules might also be added the general rule that the burden of proof rests upon the party alleging that a merger did not take place. (41 C. J. 777.)

From what has been said it follows that even if W. A. Anderson were alive and a party to this action, it would by no means be clear that the finding should be that no merger took place. However that may be, appellants have cited no case which, in our opinion, supports the contention that successors in title to the mortgagee—under facts such as we have here—should be permitted to elect, years after the mortgagee released the mortgage, to stand in the shoes of the original mortgagee and assert that they are mortgagees in possession rather than owners subject to existing liens. In a rather extended research and examination of many cases not cited by the parties we have found no case with comparable facts, which supports a present right of election by appellants. Ruby Anderson did nothing to indicate any intention to regard herself as mortgagee in possession, but on the contrary made conveyance of the land four or five months after the death of W. A. Anderson. Likewise, Jesse Anderson, to whom she delivered her quitclaim deed, made no claim to the status of mortgagee but in turn delivered the deed to appellants. It is true that after this action was begun appellants secured from Ruby Anderson an assignment of any rights she might have in the Sidler note and mortgage of August 25, 1930, to W. A. Anderson. Obviously this assignment could have no force in affecting the status of appellants. If the two estates had theretofore merged the mortgage lien could not thus be revived. (41 C. J. 783; see, also, *Johnson v. Coffin*, 127 Kan. 405, 273 Pac. 486, on question of subrogation to rights of original mortgagee.)

We now take note, briefly, of our own decisions cited by appellants. They rely principally upon *Bank v. Bank*, 103 Kan. 865. In that case the Manhattan bank held a second real-estate mortgage and the Wamego bank a third mortgage. The debt being in default, upon the senior mortgage, the mortgagors conveyed the property by deed to the Manhattan bank, holder of the mortgage, in satisfaction of the indebtedness, and the grantee entered into possession. After lapse of some months, during which time nothing was done by the holder of the junior mortgage, the Manhattan bank brought action to require it to redeem the property within a reasonable time by payment of the debt due under the senior mortgage or be barred of its junior mortgage lien. Judgment was for the plaintiff on the ground that under such circumstances equity will relieve a senior lien-holder in possession and "permit him to clear his superior title so that he can properly market his property." In the opinion it was said:

". . . a senior mortgagee who acquires the legal title of his debtor is still entitled to be considered as a mortgagee with respect to third parties. His equitable lien and his later acquired fee title do not merge against his will, if such merger would place him at a disadvantage with respect to others claiming an interest in the property." (p. 867.)

The case is in line with the general rule. As far as the record discloses, the senior mortgagee did not release its mortgage and did nothing to indicate its intention to do so. On the contrary, it brought action within a few months to establish its lien as against the junior mortgagee. There had been no subsequent conveyances of the land. That is far from the situation here presented. W. A. Anderson, holder of the first mortgage, went into possession under his deed in October, 1935, and twenty months thereafter released his mortgage of record. He thereafter continued in possession until his death in April, 1941—five and a half years after taking deed to the property and nearly four years after releasing his mortgage— and during all that time did nothing to indicate intention to retain a status as lien-holder. What transpired after his death has been related. Prior to the beginning of this action six and a half years after the Sidler deed to W. A. Anderson, none of appellants' three predecessors in the chain of title made any move of any sort to assert rights as lien-holder.

Appellants cite *Heston v. Finley*, 118 Kan. 717, 236 Pac. 841. A money judgment was entered in Sherman county in favor of one Chaplin against Heston. Soon thereafter Finley, attorney for Chaplin, filed an attorney's lien upon the Sherman county judgment. Subsequently, Finley acquired by assignment Chaplin's remaining interest in the judgment, and was substituted as judgment creditor. In an action in the nature of a creditor's bill to set off a Colorado judgment against the Kansas judgment and to enjoin Finley, assignee of the Kansas judgment, from attempting to enforce it the trial court made a finding that Finley had abandoned his attorney's lien, that it had been merged into the assignment of the judgment, and that—for reasons which need not here be recited—the assignment itself should be set aside. This court commented as to that phase of the case:

"We note, but cannot unqualifiedly approve, the theory which prevailed below that Finley's lien on the Sherman county judgment merged into the assignment of that judgment which he afterwards obtained. There is no hard-and-fast rule of law or equity to that effect in this state. It would merge or not, just as Finley chose to consider it, or as the protection of his interests might require." (p. 723.)

The court's comment in that case is in line with the general rule. Finley, the original lien-holder and assignee of the judgment, was party to the action. He had not indicated his intention to abandon his lien but on the contrary had asserted it. No such situation exists here.

*James v. Williams*, 102 Kan. 231, 169 Pac. 1163, is cited by appellants. Without reviewing the facts we simply note that while in that case the senior mortgagee, after receiving deed from the mortgagor canceled the note, he did not release the mortgage. In the opinion it was said: "In this instance the interest and the intention of the mortgagee that merger should not take place were unmistakable. . . ." (p. 233.)

Appellants also stress the case of *Shattuck v. Bank*, 63 Kan. 443, 65 Pac. 643. The Belknap Savings Bank, holder of the first mortgage brought foreclosure action and while the action was pending the mortgagor gave a quitclaim deed to the property and as part of the consideration the bank agreed the mortgagor should not be held personally liable for any deficiency judgment after the mortgaged property was exhausted. Under that agreement the foreclosure action was to proceed to final sale. The holder of the second mortgage sought unsuccessfully to have the court find that under such an agreement the first mortgage lien had been merged into the title and to have her second mortgage declared paramount. The case has no application to the instant situation.

*Loan Association v. Insurance Co.*, 74 Kan. 272, 86 Pac. 142. The property was mortgaged to the loan association and later the mortgagor insured the property against loss by fire and assigned the policy to the association as further security for its loan. Subsequently, in order to avoid foreclosure the association took deed—via a trustee—from the mortgagor. A fire loss occurred and thereafter the association conveyed the property to a third party. The insurance company refused to pay the loss, claiming that it had insured the loan association as mortgagee only and that when the association accepted a deed the liability on the policy ceased. The court held otherwise, saying: "as between the association and the insurance company it was highly important that the two interests [grantee and mortgagee] be kept separate; the security of the association depended upon such separation." (p. 277.) Election by the mortgagee clearly distinguishes that case from the one before us.

But appellants call attention to the following statements made by the court in that case:

"It has also been held that this intention need not be manifested or exercised at any particular time. The time when the merger takes place, if at all, is unimportant, unless it affects some intervening right injuriously. The intent of the party interested need not be declared nor exist when the titles become united, but may be formed or declared when it best suits the interest of the owner thereof, if no injury result to others thereby." (p. 277.)

That comment must be viewed in the light of the facts involved and obviously cannot be construed to extend the time for election into an indefinite future regardless of intervening transfers. Nor do the cases cited in the opinion support such an interpretation.

Appellants call attention to the statement in *Weeks v. Berschauer*, 140 Kan. 244, 36 P. 2d 81, that "It is only when it suits the convenience of the holder of various interests in property that those interests will be regarded as merged." It is unnecessary to recite the facts of the case, in connection with which that comment was made. Suffice it to say the case is not helpful to appellants' contention, nor can the comment have the wide application which they apparently attach to it.

We conclude that the mortgage of Laura Sidler to W. A. Anderson had merged into the fee title prior to acquisition of the property by appellants and that the demurrer to the answer was properly sustained. In view of this conclusion it is unnecessary to consider appellee's contention that in any event the statutes of limitation had run upon any right that might be asserted under the Anderson mortgage.

The judgment is affirmed.