NOT DESIGNATED FOR PUBLICATION

No. 112,201

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CML-KS Blue Valley, LLC,
*Appellee*,

v.

MJH Venture, LLC, *et al.*,
*Appellants*.

MEMORANDUM OPINION

Appeal from Johnson District Court; David W. Hauber, judge. Opinion filed October 16, 2015. Reversed and remanded with directions.

*John M. Duggan*, *Deron A. Anliker*, and *David L. Ballew*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellants.

*M. Courtney Koger* and *Anna M. Berman*, of Kutak Rock LLP, of Kansas City, Missouri, for appellee.

Before Malone, C.J., Arnold-Burger, J., and Johnson, S.J.

Arnold-Burger, J.:  CML-KS Blue Valley, LLC (CML) obtained a judgment lien against a corporate entity. This lien attached to certain real property in Lenexa, Kansas (the Lenexa Property). Years later, as the result of a settlement agreement in another action, MJH Venture, LLC (MJH) became the holder of both the title to the Lenexa Property and the more senior lien—namely, a mortgage—on it. CML attempted to foreclose its junior judgment lien under the theory that the title to the property and the mortgage had merged giving it a superior lien, but MJH insisted that no merger occurred.

1

The district court granted summary judgment in CML's favor, and MJH appeals. Because we agree with MJH that no merger occurred here, we reverse and remand the case with directions to the district court to enter judgment in favor of MJH.

FACTUAL AND PROCEDURAL HISTORY

Although most of the facts are largely not in dispute, this case involves a vast array of corporate entities, banks, courts, and financial instruments. We will limit the discussion here to the key facts necessary to a holding in this case. Because the transfers of various interests are not in dispute, we will refer only to the final successors in interest when describing the rights claimed by the parties.

At issue here is a piece of property on Renner Boulevard in Lenexa, Kansas, (Lenexa Property) owned by the Holland Corporation (Holland) and the various holders of title, liens, and mortgages on it.

Great Southern Bank (GSB) was the holder of several notes from Holland secured by, among other items of property, a mortgage on the Lenexa Property (Lenexa Mortgage). Several years later, in 2011, because of a guaranty it had issued in an unrelated matter, Holland became liable on and consented to a monetary judgment against it in excess of $20 million that was due to CML. This had the effect of attaching a judgment lien to real property owned by Holland, including the Lenexa Property, upon which GSB held the Lenexa Mortgage and its related mortgage lien.

A few months later, in February 2012, GSB filed suit against Holland claiming it was owed over $3.5 million. All the parties to that suit, including Holland and MJH, entered into a settlement agreement. As part of this agreement, which will be discussed in greater detail later, Holland conveyed another property (the Overland Park Property) to

2

GSB, and GSB assigned and transferred all its interests in the notes and the Lenexa Mortgage to MJH. This case will be referred to when applicable as the GSB action.

Approximately 6 months after the GSB action ended, CML filed the instant case, seeking the foreclosure of the Lenexa Property in order to satisfy the judgment from 2011. The petition alleged that the settlement agreement from the GSB action had required MJH to quiet title to the Lenexa Property, which MJH had failed to do. Accordingly, CML requested that the district court find its lien to be the first in time on the Lenexa Property, allow foreclosure of that same lien, and order the Lenexa Property's sale in order to satisfy the unpaid judgment.

In its answer, MJH denied that the settlement agreement required that it quiet title to the Lenexa Property. MJH also claimed that it held the first priority lien against the Lenexa Property in the form of the Lenexa Mortgage, which was first recorded in 2005. In a counterclaim, MJH also sought to foreclose all of the security interests that GSB had assigned to it, including the Lenexa Mortgage, as Holland had defaulted. MJH sought to quiet title to the Lenexa Property, as well as to prevent CML from foreclosing on the Lenexa Property and to recover damages from CML for slander of title. However, the issue of lien priority is the only issue relevant to the instant appeal.

While this action was still pending, CML agreed to release its lien over a section of the Lenexa Property. MJH's motion for summary judgment alleges and both parties agree on appeal that this release allowed MJH to sell that section of the Lenexa Property to Johnson County Water District #1 (Water One).

After a time, CML moved for summary judgment, contending once again that its judgment lien constituted the superior interest on the Lenexa Property and seeking foreclosure and sale of the same. More specifically, CML argued that because MJH held both the title to the Lenexa Property and the Lenexa Mortgage that secured said property,

3

the title and mortgage had merged. Because of this merger, MJH no longer held any lien on the Lenexa Property, which rendered CML's lien the superior interest. As evidence of merger, CML noted that the settlement agreement that transferred the Lenexa Mortgage to MJH expressly stated that the Overland Park property would not merge with another existing mortgage. CML reasoned that the parties' failure to include similar nonmerger language for the Lenexa Property either demonstrated an intent for the interests to merge or allowed for merger to be assumed. MJH opposed this motion.

MJH also moved for summary judgment, seeking foreclosure of the Lenexa Mortgage and all other, related security interests and asking the district court find that its mortgage—that is, the Lenexa Mortgage—constituted the superior interest on the Lenexa Property. Unlike CML, MJH contended that the settlement agreement expressly preserved the Lenexa Mortgage and therefore prevented merger. MJH also argued that the stipulation for dismissal in the GSB action included similar preservation language. Moreover, MJH claimed that merging the Lenexa Mortgage and the Lenexa Property and thereby allowing CML's junior lien to become the first and only lien was against MJH's interest.

The district court heard oral argument on these motions in April 2014. CML contended that when GSB transferred the Lenexa Mortgage to MJH, the title for the Lenexa Property merged with that mortgage and left MJH without a lien on the property. After reviewing the relevant caselaw, CML again argued that the settlement agreement contained no language concerning the preservation of the Lenexa Mortgage. But CML also argued that "even if the settlement agreement contained express language that a merger would not occur, [it] would argue that MJH's actions evidence that . . . they intended for a merger to occur." CML also pointed out that MJH's sale to Water One without first quieting title "evidences they had no intent to keep their lien; otherwise, they would be unable to sell it free and clear to a third party."

4

MJH, on the other hand, argued that the intent of the parties controls whether merger occurs in a given case. It also contended that a court "may only presume a merger if the mortgagee appears wholly indifferent to" that merger. Based on these legal principles, MJH concluded that the settlement agreement showed an intent to preserve the Lenexa Mortgage as it expressly allows MJH to foreclose that mortgage at a later date. Moreover, MJH argued that since the merger "would actually . . . cancel out the senior debt [the Lenexa Mortgage] and allow the junior lienholder to foreclose its mortgage," it was therefore against MJH's interest, preventing the court from presuming merger.

As for the settlement agreement itself, both parties acknowledged at the hearing that the settlement agreement was unambiguous, although they disagreed as to the effect of that unambiguous language. They also both agreed that the facts were essentially undisputed.

After reviewing the settlement agreement, the district court determined that although the agreement expressly "states that the deed for the Overland Park property 'shall not merge with the MJH mortgage,'" the agreement lacked nonmerger language for the Lenexa Mortgage. Additionally, the district court found that the order dismissing the GSB action, which primarily relied on language from the parties' stipulation of dismissal, provided that dismissal would not prejudice future foreclosures of either the Overland Park Property or the Lenexa Property. Reading these documents together with the relevant caselaw, the district court determined that the settlement agreement's failure to expressly preserve the Lenexa Mortgage demonstrated an intent to merge—and that the agreement's unambiguous language offered no reason for the district court to rely on extrinsic evidence of intent (such as the stipulation). The district court therefore declined to "read an intent into an agreement that was readily available for the parties to express, particularly when they knew how to do so with regard to the Overland Park property." Therefore, the district court determined that the Lenexa Mortgage merged with the title to the Lenexa Property and granted CML's motion.

5

Ultimately, the district court dismissed MJH's counterclaims, granted summary judgment against Holland in favor of MJH, and denied all of the other requested relief in MJH's motion for summary judgment as moot. MJH timely appealed.

ANALYSIS

Essentially, as summarized by CML, much of this case is undisputed. Both MJH and CML agreed that CML holds a valid judgment lien that has attached to the Lenexa Property. Both parties appear to concede that the settlement agreement is unambiguous. However, they fundamentally disagree on how to read this unambiguous language.

But beneath their multiple issues, subissues, arguments, and authorities lies this simple question: did the Lenexa Mortgage merge with the title to the Lenexa property and render CML's judgment lien the most senior lien on the property? MJH contends that, read together, the settlement agreement and stipulation of dismissal prove that all parties intended to preserve the Lenexa Mortgage. Moreover, MJH reasons that even if the intent is unclear, assuming a merger that harms MJH's own interests is contrary to Kansas law. CML, on the other hand, argues that the settlement agreement is silent regarding merger and that this silence combined with MJH's other acts demonstrate an intent to merge the mortgage and title.

*Standard of Review*

Where, as here, there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

*The law of merger, generally*

As described in one of the leading cases on the subject: "The primary purpose of the law of merger appears to be the prevention of confusion in titles by extinguishing the smaller one when it is completely involved in a larger estate owned and held by one and the same person." *Loan Association v. Insurance Co.*, 74 Kan. 272, 276, 86 P. 142 (1906). However, this doctrine "is not designed or permitted to operate . . . to the embarrassment or detriment of the owner or other interested person." 74 Kan. at 276. For that reason, a mortgage only merges into the greater interest (that is, the title) to eliminate confusing and complicated encumbrances when "no reason exists for the contrary." 74 Kan. at 276. But when junior mortgages exist, "it will be necessary to keep the titles separate, so as to protect the mortgagee from such inferior liens." 74 Kan. at 276.

Whether merger occurs "'is very largely a question of intention, and the court will always presume against it whenever it will operate to the disadvantage of a party.'" *Zuege v. Mortgage Co.*, 92 Kan. 272, 273, 140 P. 855 (1914). Such intent "may be established by acts or conduct as well as by direct expression." *Kansas Seventh Day Adventist Conference Ass'n v. Williams*, 156 Kan. 555, 557, 134 P.2d 626 (1943). When the parties are silent on the issue of merger, courts will generally presume that merger occurs. 156 Kan. at 557. That said, however, "the holder of the senior mortgage will be presumed . . . to have intended, when he received the mortgagor's interest, that which is clearly shown to have been to his interest." 156 Kan. at 557-58. In other words, a senior mortgage-holder is presumed to have acted in his or her own interest in regard to merger unless it can be demonstrated that the holder purposely acted against that same interest. 156 Kan. at 557-58.

*Application of the law of merger to the facts of this case*

The mortgage entered in this case contains a specific section entitled "Merger." It states:

> "There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender."

So we turn to the settlement agreement to see if the Lender ever agreed to merger. Obviously, the settlement agreement provides the best insight into whether MJH intended the Lenexa Mortgage to merge with the title to the Lenexa Property. An examination of this agreement reveals only one explicit nonmerger clause. This clause, found in Section 2.1(c) of the agreement, refers solely to Holland transferring a deed to the Overland Park Property and reads as follows:

> "[W]hich Deed shall expressly provide that it is the intention of Holland and [GSB] that the Deed *shall not merge* with the MJH Mortgage and shall not restrict the right of [GSB] to institute a foreclosure sale of the Overland Park Property or other appropriate proceeding against the Overland Park Property as [GSB] deems necessary in order to protect and preserve the priority of the lien and security interest of the MJH Mortgage." (Emphasis added.)

Otherwise, the specific "shall not merge" language never reappears, not even when discussing the assignment of the Lenexa Mortgage to MJH. That said, the agreement references the survival of the lien at other points. In the section discussing releases, for example, the agreement reads:

> "[GSB] acknowledges and agrees that the release contemplated herein shall not prohibit MJH from bringing a foreclosure action or other proceeding to enable MJH to enforce and realize upon its interests under the Holland Notes *and the [Lenexa] Mortgage* post-

8

Closing . . . and hereby consents to, any: (i) foreclosure proceedings by court action or otherwise . . . instituted by MJH in connection with realizing upon the security granted pursuant to *the [Lenexa] Mortgage* post-Closing." (Emphasis added.)

Later in the same section, the agreement provides that GSB releases the other parties from all obligations

"other than from liabilities, rights, duties and obligations preserved herein and arising out of the Notes, the [Lenexa] Mortgage and the MJH Mortgage (which Notes, [Lenexa] Mortgage and MJH Mortgage *[defendants] and [GSB] agree are hereby preserved* (the 'Lien Preservation'), solely for the purposes of preserving the indebtedness evidenced thereby, solely *for the purpose of preserving the liens created by the [Lenexa] Mortgage* and the MJH Mortgage, solely for the purpose of preserving the rights of, respectively, [GSB] and MJH, to foreclose the liens of the MJH Mortgage and [Lenexa] Mortgage post-Closing)." (Emphasis added.)

Clearly, then, CML's contention that the settlement agreement is wholly silent on the subject of the Lenexa Mortgage's survival is somewhat disingenuous. Although the settlement agreement fails to employ the explicit "shall not merge" language from the section discussing the Overland Park Property when discussing the Lenexa Property and Lenexa Mortgage, these other sections demonstrate that the parties anticipated the preservation of the Lenexa Mortgage. After all, GSB acknowledged and agreed that the agreement still allowed MJH to seek foreclosure of the Lenexa Mortgage. In fact, the agreement expressly provides that the parties all agreed to the preservation of the Lenexa Mortgage. This language would be unnecessary and superfluous if MJH intended for the interests to merge.

Finally, the settlement agreement incorporated by reference the stipulation for dismissal that was to be filed at the same time as the motion to dismiss. The stipulation for dismissal also made clear that the future right to foreclose on the Lenexa Property was

9

still preserved. The United States District Court adopted the same language in its order of voluntary dismissal.

Our Kansas caselaw, although somewhat limited on this particular question, also supports the conclusion that no merger occurred here. In *Shattuck v. Bank*, 63 Kan. 443, 65 P. 643 (1901), the Pollards executed two promissory notes, securing both with the same piece of real estate. The bank that held the first note initiated foreclosure proceedings, and during those proceedings, the Pollards provided the bank with a deed to the subject real estate as satisfaction for the debt. At trial, the district court determined that the bank held the first lien on the property and that Shattuck, the holder of the other note, held the second and more junior lien. Shattuck appealed, arguing that the bank's interests had merged.

In deciding this issue, our Supreme Court first noted that "where the holder of a lien acquires the legal title to the property upon which the lien rests, with the intention that such lien shall not be merged in the legal title, such intention will prevail as against junior encumbrances." 63 Kan. at 446. The trial court, which heard the evidence in the case, had determined that the bank never intended that its taking of title "'affect in any way the right of the [bank] to foreclose its said mortgage or trust deed . . . or its right to proceed in any way against any of the other defendants herein upon said note and mortgage or trust deed.'" 63 Kan. at 446-47. Because the evidence presented demonstrated no intent to merge the mortgage with the title, our Supreme Court affirmed the judgment. 63 Kan. at 448-49.

Although there is no comprehensive discussion of the evidence presented in *Shattuck*, the language used by the trial court in that case—namely, that the parties had essentially reserved the bank's right to foreclose on the mortgage after it took title to the subject property—is almost identical to the language used in the instant settlement agreement. The parties obviously intended, by the plain terms of the agreement, to

10

preserve the Lenexa Mortgage such that MJH could still foreclose that interest. Like in *Shattuck*, this demonstrates that MJH did not intend for the agreement to affect the rights and liabilities stemming from the Lenexa Mortgage—including the indebtedness evidenced by that mortgage and MJH's ability to pursue a foreclosure sometime in the future. See 63 Kan. at 446-47. CML's contention that there is no evidence of intent to preserve the Lenexa Mortgage is therefore misplaced.

Moreover, even if this language alone is not enough to demonstrate MJH's intent to forego merger in favor of preserving the Lenexa Mortgage, presuming merger is inappropriate in this case. Returning to *Shattuck*, our Kansas Supreme Court also found a conclusive presumption against merger in a situation where the merger of interests would promote a junior lien into a "paramount" position. 63 Kan. at 447. Relying heavily on a treatise from the time, the court noted: "'It is presumed, as a matter of law, that [a] party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security.'" 63 Kan. at 447.

Although somewhat factually distinguishable from the instant case, *Bank v. Bank*, 103 Kan. 865, 176 P. 658 (1918), demonstrates this principle rather well. There, Manhattan State Bank (Manhattan) received a deed for certain property as satisfaction for its mortgage. After the district court set a redemption period for the junior lienholder, Wamego State Bank (Wamego), Wamego appealed and essentially requested that Manhattan be barred from exercising its rights under the mortgage. In holding that Manhattan retained its rights under the mortgage, the court reiterated that a party's lien and later-acquired title "do not merge against his will, if such merger would place him at a disadvantage with respect to others claiming interest in the property." 103 Kan. at 867-68. Instead, the holder of a senior lien who also acquires title "is still entitled to be considered as a mortgagee with respect to third parties." 103 Kan. at 867.

11

Despite CML's insistence that merger places MJH at no disadvantage, the caselaw clearly demonstrates that allowing a junior lienholder to leapfrog to the place of first priority is inherently disadvantageous. See 103 Kan. at 867; *Shattuck*, 63 Kan. at 447. As previously discussed, when there is a question of whether merger occurred, a senior mortgage-holder such as MJH is presumed to act in his or her own interest. See *Kansas Seventh Day Adventist Conference Ass'n*, 156 Kan. at 557-58. Here, MJH's interest is best served by avoiding merger and allowing MJH to remain the paramount lienholder on the Lenexa Property. Presuming that merger occurred absent some indication that MJH purposely acted against that interest and to its own detriment is inappropriate. See 156 Kan. at 557-58.

CML relies heavily on a recent case from this court in defending its position regarding merger. There, the Brenemans executed a mortgage to a bank in partial consideration for a construction loan to a third party, CWD Investments LLC (CWD). *Bank of Blue Valley v. CWD Investments, LLC*, No. 106,173, 2012 WL 1237910 (Kan. App. 2012) (unpublished opinion). A lengthy series of legal proceedings ensued, and the bank eventually entered into a settlement agreement with almost all of the various parties who had become embroiled with CWD. However, the settlement agreement did not include the Brenemans. The settlement fully released CWD and all its various guarantors from indebtedness but reserved the bank's right to continue a foreclosure action against the Brenemans. At a foreclosure trial, the district court granted judgment as a matter of law in favor of the Brenemans, determining that the specific provisions of the settlement agreement concerning the satisfaction of CWD's debts controlled over the brief reference to foreclosure against the Brenemans. The bank appealed this ruling.

In analyzing the various portions of the settlement agreement, this court determined that although the bank expressly preserved some obligations concerning the CWD properties, the agreement remained silent as to the preservation of the Brenemans' indebtedness. 2012 WL 1237910, at *8-9. Instead, the agreement unequivocally stated

12

"that the CWD note was paid in full and satisfied." 2012 WL 1237910, at *9. Moreover, the language concerning the bank's continued right to continue the foreclosure action against the Brenemans did "not expressly preserve the debt for which the mortgage was security." 2012 WL 1237910, at *8. Therefore, this court reasoned that the settlement agreement had discharged the Brenemans' mortgage by rendering all of the underlying CWD debt paid in full. 2012 WL 1237910, at *9.

Other than the brief discussion of merger and the reservation of the right to foreclose, *Bank of Blue Valley* differs dramatically from this case. For one, the agreement there directly concerned the Brenemans' rights and obligations as guarantors for CWD; no such relationship exists between CML and the parties to the GSB action. See 2012 WL 1237910, at *1-5. Second, the agreement in *Bank of Blue Valley* altogether failed to preserve any of the Brenemans' indebtedness. 2012 WL 1237910, at *8-9. Here, the settlement agreement expressly preserved the Lenexa Mortgage "for the purposes of preserving the indebtedness evidenced thereby" and for MJH "to foreclose the liens of the . . . [Lenexa] Mortgage." This specific language concerning preservation as it relates to the Lenexa Mortgage is very different from a general reservation of the right to foreclose at issue in *Bank of Blue Valley*. See 2012 WL 1237910, at *8-9. Third, the court in that case found the nonmerger clause concerning the CWD properties important only because the clause had, contrary to the bank's insistence, "absolutely no effect on the Brenemans' mortgage or property." 2012 WL 1237910, at *8. In short, *Bank of Blue Valley* is distinguishable and not particularly helpful in this case.

Lastly, CML contends that the partial sale of the Lenexa Property to Water One is "'convincing evidence'" of MJH's intent to merge the Lenexa Mortgage with the title. A review of CML's summary judgment motion indicates that CML failed to raise this argument in its motion for summary judgment and instead raised it only as an aside at the hearing on that motion. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (issues not raised before the trial court cannot be raised on appeal).

Regardless, CML's argument regarding the Water One sale is based almost entirely on an Arkansas Supreme Court case, *Construction Machinery of Arkansas v. Roberts*, 307 Ark. 252, 253, 819 S.W.2d 268 (1991), in which sellers accepted a deed in lieu of foreclosure from buyers who had defaulted on a note secured by certain property. That property carried with it a judgment lien junior to the note. A few months after accepting the deed, the sellers sold a portion of the property to "strangers to the title." 307 Ark. at 254. When the escrow agent attempted to retain part of the purchase price due to the cloud on the title from the judgment lien, the sellers filed suit to cancel the lien. In reversing the district court's decision to cancel that lien, the Arkansas Supreme Court found that conveying property to a stranger to the title "constituted convincing evidence that the mortgagees intended to effect a merger." 307 Ark. at 257. To hold otherwise, the court reasoned, would unfairly allow a seller holding both the superior lien and the title to prevent a junior lienholder from recovering any money and "would wreak havoc in the marketplace of second mortgages." 307 Ark. at 257.

But here, presumably unlike in *Roberts*, MJH and GSB entered into a written contract in the form of the settlement agreement. When the terms of the contract are clear, the court must look only to the four corners of that instrument when ascertaining the parties' intent. *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009). Accordingly, "[u]nambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced." *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10, 13 P.3d 351 (2000). As previously explained, the settlement agreement clearly demonstrates an intent by both GSB and MJH to preserve the Lenexa Mortgage, the indebtedness evidenced by that mortgage, and MJH's right to foreclose upon that lien. Despite the lack of explicit nonmerger language, nothing in the agreement is ambiguous; instead, the unambiguous terms of the contract shows that the parties did not want the Lenexa Mortgage to merge with the title to the Lenexa Property.

14

Moreover, this situation differs from that in *Roberts* in another important way: CML's involvement in the sale. Although the record contains only limited information about the sale, CML clearly participated in the sale to some degree by releasing part of its judgment lien prior to the sale. And nothing in the record suggests, as CML alleges in its brief, that MJH decided "to file an after-the-fact foreclosure claim to attempt to undo the merger that it intended." In fact, MJH counterclaimed to foreclose all liens on the Lenexa Property weeks before CML released its judgment lien in July 2013. The contract for the sale indicates that although the parties to that sale originally scheduled closing in July, the sale was not finalized until September 2013, while the present action was still pending. In short, it appears that MJH did not attempt to sell the relevant portion of the Lenexa Property out from under the junior lienholder but instead worked to release the liens and sell the property unencumbered with the cooperation of the junior lienholder. The lien-protecting rationale in *Roberts* is therefore inapplicable here.

*Conclusion*

In sum, the settlement agreement from the GSB action clearly indicates that MJH intended to preserve the Lenexa Mortgage rather than merging it with the title to the Lenexa Property. Although the agreement lacks explicit nonmerger language, the unambiguous terms indicate that all parties to the agreement intended the Lenexa Mortgage's preservation. Moreover, even if that explicit language is somehow insufficient, merger cannot be presumed in the instant case because a junior lien— namely, CML's judgment lien—would leapfrog over the superior lien to MJH's disadvantage. The cases that CML relies on are distinguishable from the instant case and cannot be applied here. As such, the district court's decision finding merger and naming CML's lien the first and only lien on the Lenexa Property must be reversed.

Reversed and remanded with directions to enter judgment on behalf of MJH.