THE FORT SCOTT BUILDING AND LOAN ASSOCIATION V. THE PALATINE INSURANCE COMPANY.

No. 14,652. (86 Pac. 142.)

SYLLABUS BY THE COURT.

1. TITLE—*Merger—Legal Title Acquired by Mortgagee.* Where a mortgagee of real estate acquires the legal title to the mortgaged property, the mortgage will become merged in the larger estate or not as the mortgagee may desire or his interest require.

2. FIRE-INSURANCE—*Security for a Mortgagee—Acquisition of Legal Title by Mortgagee.* Where a mortgage on real estate is secured in part by an insurance policy issued to the mortgagor, and the mortgagee subsequently receives a conveyance of the mortgaged property and holds the same as security for the mortgage debt, the mortgage will not become merged in the legal title so as to relieve the insurance company from liability in case of fire.

3. —— *Mortgage Clause—Change of Ownership.* Where an insurance policy has attached thereto what is commonly known as a "mortgage clause," which contains a provision "that the mortgagee shall notify this company of any change of ownership . . . which shall come to his . . . knowledge," and the mortgagee subsequently receives a quitclaim deed to the mortgaged property, such conveyance will not constitute a change of ownership within the meaning of such provision.

4. —— *Proofs of Loss Waived.* When insured property is injured or destroyed by fire, and the insurance company sends an adjuster to ascertain the extent of the loss, and such adjuster after a personal examination of the premises estimates the damages and agrees upon the amount of the loss with a mortgagee whose debt is secured by a mortgage on the insured premises and also by the insurance policy thereon, such adjustment and agreement will make proofs of loss unnecessary.

5. —— *Mortgage Clause—Right to Subrogation.* Where an insurance company as a part of its policy issues what is commonly known as a "mortgage clause," which contains a provision that "whenever this company shall pay the mortgagee any sum for loss under this policy, and shall claim that as to the mortgagor or owner no liability therefor exists, it shall at once and to the extent of such payment be legally sub-

Loan Association v. Insurance Co.

rogated to all the rights of the party to whom such payment shall be made under any and all securities held by such party for the payment of said debt, but such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured," the subsequent acquisition of the legal title to the mortgaged property by the mortgagee will not affect the right of the insurance company to the subrogation as stipulated.

Error from Bourbon district court; WALTER L. SIMONS, judge. Opinion filed July 6, 1906. Reversed.

### STATEMENT.

ON September 15, 1896, H. G. Gates owned a house and lot in the city of Fort Scott, Kan. At that time he borrowed $1500 from the plaintiff in error, a building and loan association in that city, executing his note therefor. To secure the loan he and his wife executed a mortgage upon the house and lot, and he assigned to the association, as collateral security, his stock in that company to the amount of $1500. According to the terms of the loan the sum of at least $5.25 was to be paid thereon each week until paid in full.

On August 25, 1899, Gates insured this property against loss by fire in the sum of $1400, and assigned the policy to the association as further security for the loan. The insurance company, to effectuate such assignment, attached to the policy what is known as a "mortgage clause," which reads:

"Loss, if any, payable to the Fort Scott Building and Loan Association, of Fort Scott, Kan., mortgagee, or its assigns, as hereinafter provided. It being hereby understood and agreed that this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured. . . . Provided, also, that the mortgagee shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge. . . . It is also agreed that whenever this company shall pay the mortgagee any sum for loss under this policy, and shall claim that as to the mortgagor or owner no liability

therefor exists, it shall at once, and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made under any and all securities held by such party for the payment of said debt, but such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured. Or such company may at its option pay said mortgagee the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made an assignment and transfer of said debt, with all securities held by said parties for the payment thereof."

In the policy there was also this provision:

"If, with the consent of this company, an interest under this policy shall exist in favor of the mortgagee or of any person or corporation having an interest in the subject of insurance, other than the interest of the insured, as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

On February 28, 1901, Gates and wife conveyed the property to Thomas Blakey, trustee, and on April 15, 1901, Gates assigned to Blakey, trustee, his interest in the insurance policy. To this the insurance company consented. On July 30, 1901, Blakey and wife conveyed the property to the building and loan association. On July 12, 1902, the building was injured by fire. Blakey declined to make proof of loss, and the association made proofs thereof, which were not satisfactory to the insurance company. On September 23, 1902, the association conveyed the property to one Hull by a warranty deed. Gates was six months behind in his payments when he conveyed the property to Blakey, and nine months behind when Blakey conveyed to the association.

When the association received the deed from Blakey it changed its accounts with reference to the loan by

charging off the Gates stock and deducting the value thereof from the note and charging the balance ($1080.64) against the real estate. It paid $75 to Blakey for his deed. The deed from Blakey was taken by the building association to avoid a foreclosure of the mortgage, and the payment of $75 therefor was made because the costs of foreclosure would probably have exceeded that amount. The loan association did not inform the insurance company of the conveyance to it by Blakey.

After such conveyance the building association took possession of the property—rented and managed it the same as it did other property which it owned. The property was sold to Hull for $650. The loss to the building by fire was $699.86. The amount of the loss was reached by agreement between the adjuster of the insurance company and the loan association, after an examination of the property and an estimate of the damages sustained.

The case was tried to the court. No facts were found separately from the conclusions of law, and it does not appear upon what ground the court placed its judgment, which was in favor of the insurance company. The loan association brings the case here for review.

*William P. Dillard,* and *Willard W. Padgett,* for plaintiff in error.

*Sylvester G. Williams,* and *T. J. Widby,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The insurance company claims that the interest of the building association as mortgagee in the insured property was extinguished, by operation of the law of merger, when it received the conveyance from Blakey; that the insurance company stipulated to protect the building association as mortgagee only;

and that when the latter ceased to be a mortgagee its right to indemnity was at an end. The insurance company further claims that it was the duty of the mortgagee, under the mortgage clause, to notify the insurance company of any change in the ownership or increase of hazard which might come to its knowledge; that it did not notify the company of the change in ownership when it received the conveyance from Blakey; and that, at the time of the fire, the building association was owner and bound to make satisfactory proofs of loss, which it did not do.

The primary purpose of the law of merger appears to be the prevention of confusion in titles by extinguishing the smaller one when it is completely involved in a larger estate owned and held by one and the same person. This rule is not designed or permitted to operate, however, to the embarrassment or detriment of the owner or other interested person. (2 Bouv. Law Dict. "Merger"; *Donk et al. v. Alexander et al.,* 117 Ill. 330, 7 N. E. 672; *Palmer v. Burnside,* 1 Woods [U. S. C. C.], 179, 18 Fed. Cas. p. 1022.) Where a mortgagee becomes the owner of the legal title, and no reason exists for the contrary, the mortgage becomes merged in the greater title. In such a case there is no reason to keep the two interests separate, and the merger eliminates the confusion and complications which would otherwise result; but, if there are junior mortgages on the land, it will be necessary to keep the titles separate, so as to protect the mortgagee from such inferior liens. As between the mortgagor and mortgagee a merger would be proper, but not as between the holders of the different mortgage liens.

Instances might be multiplied where merger would be unobjectionable as to some parties and injurious to others. It is, therefore, generally held that whether a merger results or not, when a mortgagee acquires the legal title to the real estate upon which he holds the mortgage, depends upon the intention of the mort-

gagee, actual or presumed. If no intention appears, it will be presumed to be such as will best conserve his interests. If it appears wholly indifferent, a merger will be assumed. (2 Pom. Eq. Juris., 3d ed., § 788; 20 A. & E. Encycl. of L. 590, 1064; 1 Jones, Mort., 5th ed., §§ 848, 870; *Freeman v. Paul*, 3 Me. 261, 14 Am. Dec. 237; *Stantons v. Thompson*, 49 N. H. 272; *Goodwin v. Keney*, 47 Conn. 486; *Edgerton et al. v. Young et al.*, 43 Ill. 464; *Cole v. Beale*, 89 Ill. App. 426; *Security T. & Tr. Co. v. Schlemder*, 190 Ill. 609, 60 N. E. 854; *Smith et al. v. Roberts et al.*, 91 N. Y. 470; *Title Guarantee Co. v. Wrenn*, 35 Ore. 62, 56 Pac. 271, 76 Am. St. Rep. 454; *James v. Morey*, 2 Cow. [N. Y.] 246, 14 Am. Dec. 475.) It has also been held that this intention need not be manifested or exercised at any particular time. The time when the merger takes place, if at all, is unimportant, unless it affects some intervening right injuriously. The intent of the party interested need not be declared nor exist when the titles become united, but may be formed or declared when it best suits the interest of the owner thereof, if no injury result to others thereby. (*Goodwin v. Keney*, 47 Conn. 486; *James v. Morey*, 2 Cow. [N. Y.] 246, 14 Am. Dec. 475; *Forbes v. Moffatt*, 18 Ves. 384; *Stantons v. Thompson*, 49 N. H. 272.)

Applying these principles to this case, we find that the building association made a loan to Gates which was secured in part by the insurance policy in question. To avoid foreclosure of the mortgage given to secure the loan the association accepted a deed to the property. After this transaction there would be no occasion, as between the grantor and grantee in the deed and Gates and the association, to consider the mortgage separate from the title conveyed by the deed, but as between the association and the insurance company it was highly important that the two interests be kept separate; the security of the association depended upon such separation. The liability of the insurance

company is in no way affected thereby; it remains the same as if the mortgagor had retained the title to the land. The deed was taken by the association simply as security for the debt of the mortgagor, and this was one step toward a realization thereof.

In cities the buildings usually constitute the chief value of the property, and insurance thereon is an important element of security. In this case the insurance company, in consideration of the premium received, agreed to indemnify the association against loss to the buildings by fire. When this agreement was made the association was merely the holder of a lien on the land; after the conveyance it held the entire property, but the entire title was held as security merely, the same as the mortgage lien had been. It was a change in form only, and not in substance. This was the intention of the association at all times prior to, and at the time of, the fire.

We do not attach much importance to the manner in which the association kept an account of this loan on its books. It appears, however, that the loan was at all times charged against this land. So far as the manner of bookkeeping is evidence of anything, it shows that this land was held as security for the debt due from Gates.

As to the claim that the loan association was bound by the mortgage clause to inform the insurance company of all changes in the ownership of the property, it is sufficient to say that in this state it has been held that the acquisition of the legal title to insured property by the mortgagee is not such a change of ownership as is contemplated by the provisions of this mortgage clause (*Dodge v. Hamburg-Bremen Fire Ins. Co.*, 4 Kan. App. 415, 46 Pac. 25; *Insurance Co. v. Ward*, 50 Kan. 346, 31 Pac. 1079; *Insurance Co. v. Boardman*, 58 Kan. 339, 49 Pac. 92), and, therefore, the omission is not material.

As to the failure to make satisfactory proofs of loss,

Loan Association v. Insurance Co.

this was waived by the acts of the insurance company. The insurance company sent a special agent to examine and adjust the loss. This agent examined the property, made estimates of the damage, and agreed with the loan association upon the amount of the loss. This amounts to a waiver. (*Insurance Co. v. Francis,* 66 Kan. 751, 72 Pac. 1098.) The loan association, however, notwithstanding this waiver, made and furnished proofs of loss containing substantially all that could be required.

Finally, the insurance company contends that it has lost by the action of the loan association the right of subrogation, as stipulated in the mortgage clause. We do not so understand the situation. At the time of the fire, and for more than seventy days thereafter, and long after the insurance company was fully advised of the condition of the property, the association held the legal title to the premises, and the insurance company could at any time have paid the debt due the association and received the property. No adequate reason has been shown why this loss should not be paid.

The judgment of the district court is reversed, with directions to proceed in accordance with the views herein expressed.

All the Justices concurring.