CITY OF CHICAGO, Plaintiff, *v.* RAY MAYNUR *et al.*, Defendants-Appellees. —(NORTH SHORE SAVINGS AND LOAN ASSOCIATION, Third-Party Plaintiff-Appellee, *v.* THE HOME INSURANCE COMPANY, Third-Party Defendant-Appellant.)

(No. 60869;

First District (1st Division)—May 5, 1975.

Conklin, Leahy & Eisenberg, of Chicago (Daniel J. Leahy, of counsel), for appellants.

Robert F. Nix, of Chicago, for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

This action was initiated by a complaint filed by the City of Chicago against the owner of mortgaged property (Maynur) and his mortgagee, North Shore Savings and Loan Association (North Shore), for an order directing correction of violations of the Municipal Code of Chicago. The violations resulted from damage to the property caused by a fire.

North Shore brought a third-party complaint against The Home Insurance Company (Home) charging that Home was the insurer of the property, that North Shore as mortgagee was covered under the policy by a standard mortgage clause, and that Home was required to pay North Shore the full amount of the fire damage. The third-party complaint prayed that Home be required to pay the amount owing on the insurance to the court to be used to repair the fire damage.

A decree of foreclosure and sale of the property was entered on the complaint of North Shore on July 7, 1972, and was followed by a sheriff's sale on September 5, 1972, at which North Shore purchased the property by bidding in most of its judgment. The court approved the sheriff's sale on October 19, 1972, and found that a deficiency judgment in a small amount (substantially less than the fire loss suffered later) remained against Maynur. The fire occurred on January 9, 1973, at a time when Maynur was still in possession and when Maynur had approximately 3 months to exercise his redemptive rights. The loss was reported promptly by North Shore which did not receive a sheriff's deed to the property until April 18, 1973. No claim for insurance was made by Maynur.

Home filed an affirmative defense alleging that by reason of the sheriff's sale of the premises pursuant to the decree of foreclosure, North Shore was a creditor only to the extent of its deficiency judgment and its recovery was therefore limited to the amount of that judgment. The court entered a final appealable order striking the affirmative defense on the ground that if the allegations of the complaint were true, North Shore's

recovery should be the full fire loss rather than only the amount of its deficiency judgment. Home appeals from that order.

The two relevant provisions of the standard mortgage clause are:

"Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same.

\* \* \*

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt; or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim."

Two issues are raised: First, where a mortgagee covered by a standard mortgage clause bids in most of its debt at a foreclosure sale held prior to a fire, is it thereafter protected against fire loss occurring before the period of redemption expires to the full extent of the loss or only in the amount of its deficiency?

The second issue is whether the insurer is justified in refusing to pay the full amount of the fire loss on the ground that foreclosure by the mortgagee prior to the fire impaired the insurer's right of subrogation.

■■ Home concedes that to hold in its favor on the first issue, this court must decline to adhere to the rulings in *Trustees of Schools v. St. Paul Fire & Marine Insurance Co.* (1920), 296 Ill. 99, 129 N.E. 567, and

*Guardian Savings & Loan Association v. Reserve Insurance Co.* (1971), 2 Ill.App.3d 77, 79, 276 N.E.2d 109. Both cases upheld the right of a mortgagee to recover the full loss suffered from a fire occurring after a foreclosure in which the mortgagee was the purchaser. In the first case, the supreme court held that a foreclosure was not complete until the redemption period had passed, and while the process of foreclosure was going on, the mortgagee continued to have an insurable interest under an agreement which provided, as does the one in this case, that foreclosure should not invalidate the insurance payable to the mortgagee. In the second case, this court held in a situation involving acceptance by the mortgagee of a quitclaim deed in lieu of foreclosure and recorded prior to the fire loss that the standard mortgage clause was intended to cover the mortgagee's interest as it succeeded to ownership through foreclosure.

Cases in other jurisdictions in which results substantially equivalent to those in the Illinois cases were reached are *Federal National Mortgage Association v. Great American Insurance Co.* (Ind. App. 1973), 300 N.E. 2d 117; *Federal National Mortgage Association v. Ohio Casualty Insurance Co.* (1973), 46 Mich. App. 587, 208 N.W.2d 573, 575; *Employers' Fire Insurance Co. v. Ritter* (1933), 112 N.J. Eq. 418, 164 A. 426. The theory of these cases is that the standard mortgage clause creates an independent contract of insurance between the mortgagee and the insurer and that the mortgagee's acquisition of the property through foreclosure results in an increase in the mortgagee's interest rather than a change of ownership. This was the theory on which the *Guardian Savings & Loan* case was decided by this court. In addition, the use of the word "mortgagee" in the clause is interpreted to cover the person named as mortgagee whether its interest remains that of mortgagee or changes into one of ownership. This is supported by the language in the clause protecting the mortgagee even in event of a change in ownership, this language being construed to provide that if the mortgagee should become the owner it is still covered by the independent contract of insurance.

Home invites attention to the holdings in the following cases, suggests that they are in conflict with the Illinois cases referred to above but represent a sounder legal approach, and urges this court to reach a conclusion in harmony with these cases: *Whitestone Savings & Loan Association v. Allstate Insurance Co.* (1971), 28 N.Y. 2d 332, 321 N.Y.S. 2d 862, 270 N.E.2d 694, and *Northwestern National Insurance Co. v. Mildenberger* (Mo. Ct. App. 1962), 359 S.W.2d 380. These cases are different from those referred to above and from this one because in both of them the fire occurred before the foreclosure was commenced and at the foreclosure the mortgagee bid in the full amount of the indebtedness and accrued interest. The bid was for the property in its damaged condition,

and the theory of the cases which Home urges upon this court is that the value of the security in its damaged condition was at least equal to the amount of the indebtedness, and therefore by taking the damaged property the mortgagee received the amount owed it, the debt was extinguished and the mortgagee had no further insurable interest. In this case and the others referred to above, the amount bid at the foreclosure was for the property in an undamaged condition and the mortgagee required the insurance proceeds to restore the property to the condition it was in at the time of the foreclosure.

If there is inconsistency between the two authorities on which Home relies and the Illinois cases discussed above, this court's opinion is that it should adhere to the conclusion reached in the Illinois cases, not only because of their precedential value, but also because they are more equitable and realistic at least in instances where the foreclosure precedes the fire. First, as pointed out above, the mortgagee is in need of the insurance proceeds to make itself whole. Second, a mortgagee who has foreclosed has a type of ownership of which he may be divested until the period of redemption has expired. Until then, the mortgagor continues to have an insurable interest as owner. Why should the mortgagee, so long as its ownership may be only temporary, be required to procure an owner's policy in order to protect itself adequately? Third, the premium has been paid, and the insurer should not be permitted to avoid the obligation of insuring premises which have been the subject of foreclosure, particularly in view of the provision of the policy that foreclosure does not invalidate the mortgagee's protection. Fourth, unless the mortgagee's recovery is protected, there is a possibility that the insurer after collecting the premium may never be required to respond to the loss. Fifth, insurance companies in Illinois aware of the *Trustees of Schools* decision must have assumed in fixing their rates that they were contracting for the obligation that ruling places upon them. Finally, there is a clear public interest in continuing insurance on foreclosed property so that in the event of fire the mortgagee will not be left without funds to repair it with the consequence that the property may blight a community. For these reasons, this court believes that the direction in which the *Trustees of Schools* and *Guardian Savings & Loan* decisions point is desirable and declines on the facts of this case to pursue the New York and Missouri rulings urged by Home.

■■ With respect to the issue of subrogation, the provision on which Home relies is, by its wording, applicable only if the insurer claims that no liability exists to the mortgagor for the fire loss. Home has made no such claim here, and there is no suggestion in any of the facts presented that any such claim could be made.

In addition, attention is invited to the last clause of the subrogation provision for it excludes any subrogation that might impair the right of the mortgagee to recover the full amount of its claim.[1] Therefore, the inability of North Shore to assign to Home Maynur's note and mortgage because they were extinguished in the foreclosure does not defeat North Shore's recovery. *First Federal Savings & Loan Association v. Hartford Fire Insurance Co.* (1968), 100 N.J. Super. 252, 241 A.2d 653.

In arguing the subrogation issue, Home places principal reliance on *Transport Realty Co. v. Commercial Union Insurance Co.* (7th Cir. 1968), 404 F.2d 892, and *Insurance Company of North America v. Citizens Insurance Co.* (7th Cir. 1970), 425 F.2d 1180. The former holds that when the mortgagor pays the mortgage in full, the mortgagee has no further interest in the insurance proceeds. This legal principle is sound, but not applicable here because the mortgagor's failure to pay the mortgagee resulted in a foreclosure proceeding. Nevertheless, North Shore has subscribed to this principle by offering to deed the property to Home and waive the insurance proceeds if Home would pay it the full amount of the preforeclosure indebtedness. The *Transport Realty* case also points out that there is nothing in the subrogation provision or the policy which gives the mortgagor the right to be subrogated to the position of the mortgagee, a conclusion which is also acceptable, but has no relevance to the subrogation issue in this case.

*Insurance Company of North America* is not persuasive as an authority in this case because in determining that the subrogation provision precluded recovery of insurance proceeds by a mortgagee, the only decisions the court relied upon were ones holding that bidding for property at the full amount of the indebtedness in a foreclosure sale after a fire loss extinguishes the debt. Since in deciding the meaning of the standard mortgage clause in this case we have rejected such holdings, there is no reason to be guided by them in resolving the subrogation issue.

In view of the policy provision which states that the subrogation privilege shall not impair the right of the mortgagee to recover, it would be inconsistent for this court to conclude as we have done in reliance on *Trustees of Schools*, that the mortgagee was entitled to recover after foreclosure while at the same time precluded by reason of the foreclosure from recovery under the subrogation provision. Moreover, the opinion in *Insurance Company of North America* ignored the failure of the insurance company to claim that no liability existed as to the mortgagor. No

---

[1] This clause reads: "* * * but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim."

such claim could have been asserted in that case because the insurer had already made a substantial payment to the mortgagors on their loss.

The order striking Home's affirmative defense and finding Home liable for the full fire loss is affirmed.

Affirmed.

GOLDBERG and EGAN, JJ., concur.