444 A.2d 130

## The LAUREL NATIONAL BANK, Appellant

v.

## MUTUAL BENEFIT INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed April 12, 1982.

474

Edward Peduzzi, Ebensburg, for appellant.

R. Thomas Strayer, Johnstown, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

The instant appeal arises from an order awarding appellant, Laurel National Bank ("Laurel Bank"), insurance coverage as mortgagee under one mortgage but denying it coverage on the same property and under the same policy under its second mortgage. Laurel Bank contends that both mortgages should be covered by the insurance policy and that the amount due under the policy should not be limited to its pre-foreclosure debt.

The following transactions occurred on November 28, 1975. Dorance L. Jensen and his wife, Mary L. Jensen, conveyed a parcel of land to H. Lynn Hale and Ann Hale in consideration of a $38,000 purchase price. The Hales then executed and delivered a mortgage on this parcel in favor of

Laurel Bank to secure a loan for $25,000. The Hales also executed a second mortgage on the premises in favor of the Jensens to secure a loan of $27,000. The Jensens then assigned the Hales' second mortgage to Laurel Bank, the first mortgagee. The Hales also secured a homeowner's insurance policy on the newly purchased property through appellee, Mutual Benefit Insurance Company ("Mutual Benefit"). The policy provided coverage for loss from fire in the amount of $50,000 for the dwelling and $5,000 for appurtenant structures, and $25,000 for unscheduled personal property. The policy contained a standard mortgage clause naming Laurel Bank as mortgagee.

The Hales defaulted on their mortgage payments almost immediately. Laurel Bank then foreclosed on both mortgages and on personal property covered in a security agreement. A sheriff's sale was held on October 22, 1976 and the real and personal property was struck to Laurel Bank for costs, approximately $14,000.

On November 19, 1976, fire destroyed the house and personal property which were financed by the two mortgages. Mutual Benefit was notified of the fire damage by Laurel Bank soon thereafter and at that time first became aware of the mortgage foreclosure.

 The only issue concerns the extent of Laurel Bank's interest in the insured property and the amount of insurance proceeds it is entitled to recover for the loss because of its interest. While a mortgagee has an insurable interest, the mortgagee is usually insured only to the extent of the mortgage debt since the amount of the debt represents its personal interest in the property. *Chestnut Corporation v. Bankers Bond and Mortgage Co.*, 395 Pa. 153, 149 A.2d 48 (1959).

The problem in the instant case is that the bank's interest, and therefore the amount of insurance proceeds it may recover, is not easily determined. Prior to the fire, Laurel Bank bid in its interest and foreclosed its two mortgages. The bank ceased to be a mortgagee when it ripened its

interest into ownership. Since the foreclosure of the mortgage normally extinguishes the mortgage debt, and the loss was sustained after the foreclosure, the first question becomes whether Laurel's interest even remained covered by the insurance contract. Our research has not uncovered any Pennsylvania precedent on this point so we must turn to the case law of other jurisdictions.

■ In resolving this issue, we again note that Mutual Benefit's insurance policy contained a standard mortgage clause. The pertinent language of this clause reads as follows:

Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance, as to the *interest of the mortgagee* (or trustee) only therein, *shall not be invalidated by any act or neglect of the mortgagor* or owner of the within described property, *nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property,* nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. *Provided also, that the mortgagee* (or trustee) *shall notify this Company of any change of ownership* or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void. (Emphasis supplied).

It's clear from this language that the parties contemplated the possibility of foreclosure. Moreover, the insurer agreed

to provide coverage for the mortgagee's interest in the property even if there was a "foreclosure or other proceedings or notice of sale relating to the property" or a "change in the title or ownership of the property." The foreclosure referred to in the contract must mean a foreclosure by the mortgagee since the purchase of the property by anyone else at the foreclosure proceedings would extinguish the mortgagee's insurable interests. As an appellate court in Illinois stated, "[I]t is apparent that the provisions of the mortgage clause in question [a standard mortgage clause] were clearly intended to cover the mortgagee's interest as it succeeded to ownership through foreclosure." *Guardian Savings & Loan Association v. Reserve Insurance Co.*, 2 Ill.App.3d 77, 79, 276 N.E.2d 109, 111 (1971).

The provision requiring the mortgagee to notify the insurer of any "change in ownership" must be construed as requiring notice only when someone other than the mortgagee acquires the property. The reference in the first paragraph to "foreclosure or other proceedings" and "change in . . . ownership" refers to two different occurrences. Since only a "change in ownership" is spelled out as requiring notification in the second paragraph of the clause, an increase in the mortgagee's interest through foreclosure must not require notification. This is in accordance with the theory that under a policy containing a standard mortgage clause, the mortgagee's interest is regarded as separately insured, and his acquisition of title to the insured property is generally regarded as an increase of interest, rather than a change of ownership. *See* 43 AM.JUR.2d, *Insurance*, § 890 (1969). From this construction, it follows that the acquisition of title by the mortgagee cannot be used by an insurer to deny coverage under the provision requiring notice when there is a "change of ownership". Our holding is supported by the case law of numerous jurisdictions. *Guardian Savings & Loan Association v. Reserve Insurance Co., supra; Federal National Mortgage Association v. Great American Insurance Co.*, 157 Ind.App. 347, 300 N.E.2d 117 (1973); *Fort Scott Building & Loan Association v. Palatine Insurance Co.,*

74 Kan. 272, 86 P. 142 (1906); *Federal National Mortgage Association v. Ohio Casualty Insurance Co.*, 46 Mich.App. 587, 208 N.W.2d 573 (1973); *Shores v. Rabon*, 251 N.C. 790, 112 S.E.2d 556 (1960).

■ The question remains, however, whether the "change in ownership" in the policy provision applies when the mortgagor's period of redemption has expired. Since we held that the provision requiring notice only pertained to someone not a party to the original contract, we fail to see the significance of the passage of the period of redemption. The insurance company should explicitly incorporate a provision in the contract requiring notice that the period of redemption after foreclosure has passed if it desires such notice. *See Federal Land Bank of Columbia v. Agricultural Insurance of Watertown, New York*, 172 S.C. 109, 173 S.E. 295 (1934); *Oregon Mortgage Co. Ltd. v. Hartford Fire Insurance Co.*, 122 Wash. 183, 210 P. 385 (1922).

■ In applying the above legal propositions to the case before us, it is clear that Laurel Bank's insurable interests continued to be covered under the standard mortgage clause in the policy even though it increased its interest by bidding in the mortgage debt at the foreclosure proceedings. At the time of the loss, the mortgagor's period of redemption had passed. *See* 13 Standard Pennsylvania Practice 645 ("In Pennsylvania, the mortgagor has no common-law equity to redeem the property after the sheriff's sale, and no such right is conferred by statute.") (citation omitted). Since the mortgagors, the Hales, made no effort to redeem the property, they cannot claim any portion of the insurance proceeds. The bank, as owner, therefore, is entitled to the full amount of insurance proceeds due under the policy.

The above is true even though the insurance proceeds and the value of the damaged property were more than the value of the remaining mortgage debt. Mutual Benefit's insurance policy protected the insurable interests of the mortgagors, the Hales, and the mortgagee, Laurel Bank. The mortgagor's rights to any insurance proceeds were cut

off by foreclosure but the mortgagee's rights to any insurance proceeds increased while remaining insured under the policy by the standard mortgage clause. If we held that Laurel Bank was only entitled to its remaining mortgage debt, the insurance company would receive a windfall since the mortgagors' (the Hales') rights had been extinguished. *See Malvaney v. Yager*, 101 Mont. 331, 54 P.2d 135 (1936).

The instant case is similar to the leading case of *Continental Insurance Company of New York v. Rotholz*, 222 Ala. 574, 133 So. 587 (1931). In *Rotholz*, the mortgagee foreclosed and purchased the property at the foreclosure sale within the policy coverage time and prior to the loss by fire. In answering the insurer's contention that there had been a change of ownership and that no notice had been given of the change, the court replied that the standard mortgage clause created an independent contract and the elevation of the mortgagee to owner by foreclosure prior to the fire loss did not affect the operation of the clause. The court further held that the fact that the mortgage debt had been satisfied prior to suit did not preclude recovery under the policy by the mortgagee when the loss occurred subsequent to the satisfaction of the mortgage debt.

After quoting *Rotholz* with approval, the court in *Nationwide Mutual Fire Insurance Co. v. Wilborn*, 291 Ala. 193, 279 So.2d 460 (1973) stated:

> In the "foreclosure prior to loss" situation (*Rotholz*) the foreclosure (or other change or increase of ownership or change of title as contemplated by the loss payee clause) occurs in the context of the insured property existing in its undamaged condition and the satisfaction of debt takes into account the value of such property in its undamaged condition prior to loss and the need for the insurance to follow the property.... [T]he value of the undamaged property at the time of foreclosure is an incident to the satisfaction of the debt.

*Id.* 279 So.2d at 464.

Both *Wilborn* and *Rotholz* were careful to note that where the loss *precedes* the foreclosure, the rule is different since

the mortgagee may satisfy the mortgage indebtedness by two different means. First, he may recover up to the limits of the policy the full amount of the mortgage debt under the standard mortgage clause. The second alternative is to satisfy the mortgage debt through foreclosure and then recover the balance due, if there is any, under the insurance policy as owner. In contrast to the instant case,

> the foreclosure occurs in the context of the insured property having been damaged and the satisfaction of the debt takes into account the damaged conditions of the property at the time of foreclosure. [T]o allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to mortgagee's unjust enrichment.

*Nationwide Mutual Fire Insurance Co. v. Wilborn, supra* 291 So.2d at 464. *Accord: Rosenbaum v. Funcannon,* 308 F.2d 680 (9th Cir. 1962); *Lembo v. Parks,* 6 Mass.App. 850, 372 N.E.2d 1316 (1978).

■ A general rule may be formulated to establish that under a policy containing a standard mortgage clause, the mortgagee's interest is protected as it may appear before or after foreclosure or other methods of change of ownership or title for the insurance follows the property. The exception to this general rule is that if the mortgage indebtedness is *fully* satisfied *after* loss by foreclosure or other means, the mortgagee may not recover any proceeds under the insurance policy.

In adopting this general rule, we hold that the mortgagee, Laurel Bank, was covered at the time of the loss as owner. In so holding, we have overruled the lower court's finding that the bank's compensation for damages to the insured property is limited to the amount of pre-foreclosure debt. The authority cited by the court below, *Federal National Mortgage Association v. Great American, supra,* also held that a mortgagee which had increased its interest to ownership following foreclosure was entitled to insurance proceeds for a subsequent loss because the standard mortgage clause had created a separate, independent contract. Without any analysis or explanation, however, that court then limited the

mortgagee's recovery to its pre-foreclosure debt even though it clearly held that the mortgagee's increased interests as owner were covered. We do not find *Great American* to be convincing authority for limiting the extent of insurance proceeds recoverable by the mortgagee in this situation.

Finally, we wish to note that the trial court's criticism of *City of Chicago v. Maynur*, 28 Ill.App.3d 751, 329 N.E.2d 312 (1975) is not applicable to the instant case. The Illinois rule announced in *Maynur* also held that the mortgagee in the "loss after foreclosure" situation may collect to the full extent of the loss rather than only to the extent of its pre-foreclosure debt, even though the loss exceeds the debt. In criticizing *Maynur*, the lower court noted that the mortgagor would be entitled to the amount in excess of the mortgage debt since the redemption period had not yet expired. We again note that the Hales' redemption period had passed so that in the instant situation there is no possibility that Mutual Benefit would have to pay a portion of the claim twice. *See Consolidated Mortgage Corporation v. American Security Insurance Company*, 69 Mich.App. 251, 244 N.W.2d 434 (1976) (Dissent).

---

In conclusion, we find that Laurel Bank increased its interests into ownership and that its increased interest continued to be covered under Mutual Benefit's policy. Since the loss occurred after the foreclosure, Laurel Bank, as owner, is entitled to the full amount of insurance proceeds which would have been payable to the Hales, the original owners and mortgagors.[1]

1. Since we have determined that Laurel Bank's insurable interest was that of owner and not that of mortgagee, we need not address the lower court's holding that the bank's second mortgage was not covered by Mutual Benefit's policy. In any event, we note that the mortgagors were required to secure and maintain a liability insurance policy with a loss payable clause in favor of the mortgagor and mortgagee "as their respective interest may appear." "The purpose of such a provision is purely to protect the mortgagee's interest, and such interest continues until the mortgage debt is paid." *Guarantee Trust and Safe Deposit Insurance Company of Shamokin v. Home*

Judgment reversed and this case is remanded to determine the amount of insurance proceeds due appellant.[2]

LIPEZ, J., concurs in the result.

*Mutual Fire Insurance Company of Broome County, New York,* 180 Pa.Superior Ct. 1, 7, 117 A.2d 824, 827 (1955).

5 Couch, Insurance 2d § 29:82 (1960) provides:

As a general rule, if the mortgagor covenants to keep the mortgaged property insured for the better security of the motgagee [sic], the latter will have an equitable lien upon the proceeds of insurance carried by the mortgagor, in case of a loss, to the extent of his interest in the property destroyed, even though the policy contains no mortgage clause and is payable to the mortgagor. The rule is likewise applied even though there is no formal covenant but merely an agreement of the parties, and it is oral.

The equitable lien doctrine is followed in Pennsylvania. *Pearson Mfg. Co. v. Pittsburgh Steamboat Co.,* 309 Pa. 340, 163 A. 680 (1933); *First National Bank of Jessup v. Cappellini,* 149 Pa.Superior Ct. 14, 26 A.2d 119 (1942). Therefore, Laurel Bank's second mortgage would have been covered under the policy even though it was not specifically set forth in the policy. This is logical since the purpose of the provision is to protect the mortgagee and there were no conflicting claims over the proceeds.

In view of our decision today, we need not reach Laurel Bank's second contention that the lower court erred in sustaining Mutual Benefit's objection to Laurel Bank's offer into evidence of the renewal insurance policy as issued by Mutual Benefit involving the same parties and subject matter as the original policy.

2. Laurel Bank took a direct appeal to this court from the Order dated June 15, 1979 dismissing exceptions *en banc.* We quashed the appeal as being interlocutory. 295 Pa.Superior Ct. 255, 441 A.2d 756. Final judgment was thereafter entered and on February 9, 1982 we granted appellant's petition for reconsideration and now reach the merits of the appeal.