Carol SOTELO, Appellee,

v.

**WASHINGTON MUTUAL INSURANCE COMPANY and Everett Cash Mutual Insurance Company, Appellants.**

Carol Sotelo, Appellant,

v.

Washington Mutual Insurance Company and Everett Cash Mutual Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 28, 1999.
Filed June 24, 1999.

Richard F. Andracki, Pittsburgh, for Washington Mut. Ins. Co. and Everett Cash Mut. Ins. Co.

James R. Fryling, Erie, for Carol Sotelo.

Before DEL SOLE, ORIE MELVIN and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 This action involves cross-appeals from the judgment entered on July 20, 1998. Appellee/appellant, Carol Sotelo, held two mortgages on property insured by appellants/appellees, Washington Mutual Insurance Company and Everett Cash Mutual Insurance Company (hereinafter appellants).[1] When the property burned down, Sotelo sought to recover under the policy issued by appellants, and the parties now dispute the extent of Sotelo's insurable interest and the amount due under the policy. Appellants claim the trial court erred by accepting in toto the valuation of the above property by Sotelo's expert and in awarding Sotelo a recovery (1) in excess of the property's value, (2) in excess of the mortgage debt on the date of the loss and (3) in excess of the applicable policy limit for loss to building items. In her cross-appeal, Sotelo claims the trial court erred by allowing appellants credit for a payment they made to North East Township.

¶ 2 On October 27, 1992, a fire destroyed the Delhurst Country Inn at 10120 West Main Road, North East Township, Erie County, Pennsylvania. At the time, Randco, Inc. (hereinafter Randco), owned the property,[2] and it owed Sotelo a total of $395,545.37, which included substantial late payment penalties.[3] (See N.T., 4/27/98, at 12; Plaintiff's Exhibit 1, Delhurst Installment Notes, prepared by Kenneth L. Appletree, C.P.A., 4/24/98.) Sotelo held two mortgages on the property in the combined amount of $389,000,[4] and Washington Mutual Insurance Company insured the building under a policy with a $432,000 limit.[5]

¶ 3 Following the fire, Washington Mutual denied the insurance claims of both Randco and Sotelo. Washington Mutual defended against Randco's claim on the basis of arson,[6] and Randco and Washington Mutual eventually reached a settlement. Sotelo was not implicated in any wrongdoing, but Washington Mutual nevertheless failed to pay Sotelo the policy proceeds until June 28, 1993, some eight months after the fire. On that date, Washington Mutual sent Sotelo a check for $220,576.17 based on the evaluation of its adjuster, Kenneth Wyten of Crawford and Company. Washington Mutual also paid North East Township $9,020.83, citing 40 P.S. § 638, **Municipal certificate required prior to payment of fire loss claims.**

¶ 4 On July 26, 1993, Sotelo initiated the instant action against appellants, asserting a breach of contract. Subsequently, appellants filed a motion for partial judgment on

1. Everett Cash Mutual Insurance Company is the successor of Washington Mutual Insurance Company.

2. Randco, Inc. was formed by Patricia Cook and Brian and Cheryl Randall after they purchased the Delhurst country Inn from Sotelo and the Delhurst corporation.

3. The late payment penalties had accrued over 20 months and amounted to $12,763.62.

4. The two mortgages were in the amounts of $274,000 and $115,000. Although the smaller mortgage was originally held by the Delhurst Corporation, Delhurst had assigned its interest to Sotelo.

5. The policy issued by Washington Mutual Insurance Company also covered business personal property in the amount of $200,000. However, the interest of a mortgagee only extends to real property or personal property so annexed to the real estate so as to be considered part of the real property. See General Elec. Credit Corp. v. Aetna Cas. and Sur. Co., 437 Pa. 463, 474, 263 A.2d 448, 454 (1970).

6. Everett Cash Mutual also apparently initiated an action against its insurance agent, asserting fraud and misrepresentation associated with Randco's application.

the pleadings and Sotelo responded with her own motion for judgment on the pleadings/motion for summary judgment. On June 7, 1994, the trial court denied Sotelo's motion and granted partial judgment on the pleadings in favor of appellants. The court found that, "by the express terms of the policy, [Sotelo] is only entitled to actual cash value and not replacement cost as the property was not rebuilt." (Trial Court Opinion, Domitrovich, J., 6/7/94, at 3.) The trial court also held that appellants' "payment of $9,020.83 to North East Township ... was properly made pursuant to 40 P.S. § 638, and that the amount of this payment should be deducted from [Sotelo's] recovery in this case." (*Id.* at 3–4.)

¶ 5 Following the above decision, the case proceeded. The record contains at least two sets of admissions, and appellants filed a petition for judgment of non pros, a motion for summary judgment and a motion for partial summary judgment, all of which were denied. After a nonjury trial on April 27, 1998, the trial court found in favor of Sotelo and awarded her two hundred and fifty-five thousand, four hundred and three dollars ($255,403). In doing so, the court accepted the opinion of Sotelo's expert that the actual cash value of the property was $485,000. It then deducted appellants' previous payments of $220,576.17 to Sotelo and $9,020.83 to North East Township. (Record # 82, Trial Court's Decision, 4/29/98.) Appellants and Sotelo both filed post-trial motions, which were denied. The parties then filed notices of these appeals.

■■■ ¶ 6 On appeal, the parties primarily dispute the amount of Sotelo's insurable interest and the limits it imposes on Sotelo's recovery as a mortgagee. In order to have an insurable interest in property, a person must derive pecuniary advantage from the continued existence of the property or suffer pecuniary loss from its destruction. *Alberici v. Safeguard Mut. Ins. Co.*, 444 Pa.Super. 351, 664 A.2d

110, 113 (1995). "The mortgagee's insurable interest is prima facie the value mortgaged, and extends only to the amount of the debt, not exceeding the value of the mortgaged property." 3 Couch on Insurance 3d § 42:32. Generally, the mortgagee's insurable interest is the amount of the mortgage debt since the debt represents its personal interest in the property. *Laurel Nat'l Bank v. Mutual Benefit Ins. Co.*, 297 Pa.Super. 473, 444 A.2d 130, 131 (1982). The mortgagee's insurable interest is initially presumed to be the value mortgaged, however, and a mortgagee's insurable interest cannot exceed the value of the property subject to the mortgage. Consequently, a mortgagee's ability to recover "is limited to the extent of the debt secured by the property." *Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 400 (Ind.Ct.App.1990).[7]

¶ 7 Appellants first contend the trial court erred by accepting the evaluation of Sotelo's expert and awarding Sotelo a recovery in excess of the property's value. Sotelo's expert, Raymond Sammartino, estimated the pre-fire actual cash value (ACV) of the Delhurst Country Inn to be $485,000. Appellants point to the property's November 1990 sale price and claim Sammartino's estimate is "dubious, overstated and simply not credible." (Appellants' Brief at 20.) After reviewing the record, however, we do not agree with appellants' claim. Moreover, this Court is not permitted to reexamine the credibility determinations of a trial court acting as factfinder. *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 841.

■■ ¶ 8 On November 20, 1990, Sotelo and the Delhurst Corporation sold the Delhurst Country Inn to Patricia Cook and Brian and Cheryl Randall, who later formed Randco. In the purchase agreement, the price of the property was allocated as follows:

---

7. As a practical matter, this means that an insurance company is responsible to a mortgagee for the lesser of (1) the debt, (2) the mortgage amount or (3) the property's value.

| | | |
|---|---|---|
| (a) | Liquor license No. TR14711, and amusement permit No. R–14711 | $ 30,000.00 |
| (b) | Fixtures and equipment listed on Exhibit "B" | 50,000.00 |
| (c) | Goodwill and name | 35,000.00 |
| (d) | Real estate as set forth on Exhibit "A" | 204,000.00 |
| (e) | Covenant note to compete | 80,000.00 |
| | TOTAL | $399,000.00 |

(*See* Exhibits filed by appellants at nonjury trial, 4/27/98; Record # 74, Exhibit "A" to Affidavit of Richard F. Andracki, 4/17/98.) Appellants contend the above purchase agreement demonstrates that Sotelo's insurable interest was no more than $254,000, being the sum of the real estate and fixtures. We find appellants' contention to be unconvincing. The allegedly "market" price represented by the purchase agreement does not directly relate to the ACV, which is defined as replacement cost less depreciation. Furthermore, the parties to a sales transaction such as the above have a myriad of reasons for manipulating both the total purchase price and its allocation to various items.[8]

■ ¶ 9 Having accepted the trial court's determination that the property's ACV was $485,000, we nevertheless conclude the trial court erred by basing its award on the property's ACV, instead of the mortgage amount. As previously stated, a mortgagee's insurable interest cannot exceed the value of the property subject to the mortgage. If the mortgage amount exceeds the property's ACV, then the value of the property "subject to the mortgage" would obviously include the entire ACV of the property. However, in this case, the property's ACV exceeded the mortgage amount.

■ ¶ 10 A mortgagee's insured interest is limited to the outstanding mortgage debt, to the extent it is secured by the property. *See* 3 Couch on Insurance 3d § 42:32. There is no dispute that the principal balance owed on the mortgages on October 27, 1992, the date of the loss, was $382,781.75. As previously noted, however, Randco also owed an additional $12,763.62 incurred as late payment penalties. This part of the debt was secured by both mortgage agreements.[9] Thus, appellee's insurable interest was $395,545.37 or the total of the outstanding mortgage debt. Appellants merely argue that the amount of the late payment penalties is unreasonable because it represents 9.8% of the total payments due at the time of the loss. (Appellants' Reply Brief at 8.) Appellants contend the penalties are inappropriate to be included in the damages as they should have been resolved with the mortgagor prior to the loss. *Id.* at 8–9. Clearly, there is no merit to this argument nor do we find that the issue has been waived.

■ ¶ 11 Appellants' third claim is the trial court erred by awarding Sotelo a recovery in excess of the policy limit of $432,000. This claim is also largely moot.[10] While appellants are correct that a mortgagee's recovery may not be *based on* an amount in excess of the policy limit, a mortgagee is nevertheless legally entitled to prejudgment interest when an insurer breaches a contract of insurance. Therefore, a mortgagee may sometimes recover an amount, which does in fact exceed the policy limit. *Browne v. Nationwide Mut. Ins. Co.*, 713 A.2d 663 (Pa.Super.1998).

■ ¶ 12 On cross-appeal, Sotelo contends the trial court erred by crediting appellants for their $9,020.83 payment to North East Township. We agree. Under

8. For example, the parties may want to reduce transfer taxes by devaluing the property, or the parties may allocate only a small portion of the purchase price to the real estate since real property is not a depreciable asset.

9. The first uniform covenant in each agreement provided that the Borrower and Lender agree "Borrower shall promptly pay when due the principal of and interest on the in-

debtedness evidenced by the Note, prepayment and *late charges* as provided in the Note, and the principal of and interest on any Future Advances secured by this Mortgage." (Emphasis added.)

10. If Sotelo's recovery was based on the policy limit of $432,000, appellants would actually incur a larger obligation than under our previous analysis.

the relevant statute, a *named insured* may not be paid for fire damage to a structure until the insurance company satisfies the municipality's claims for delinquent taxes and assessments. 40 P.S. § 638. By its terms, the statute does not apply to the claim of a mortgagee, such as Sotelo. Moreover, the statute requires the payment of obligations which are not the responsibility of a mortgagee.[11] Finally, we fail to understand how Sotelo could benefit from appellants' payment to the township. Since the municipality's claims accrued after Sotelo's validly recorded mortgages, Sotelo could foreclose on the property, have her mortgages satisfied and never pay the municipality's claims.

¶ 13 For the aforesaid reasons, the judgment of the trial court is vacated. On remand, Sotelo's recovery will be based on her insurable interest in the amount of $395,545.37. Appellants will be given credit for their partial payment to Sotelo of $220,576.17, but they will not receive credit for their $9,020.83 payment to North East Township. Finally, the trial court will award Sotelo pre— and post-judgment interest at the legal rate of six percent per annum.

¶ 14 Judgment vacated and case remanded for proceedings in accordance with this Opinion.

¶ 15 Jurisdiction relinquished.

---

**11.** Those obligations include delinquent taxes, assessments, penalties, user charges and costs incurred by the municipality for the removal, repair or securing of a building. 40 P.S. § 638(b)(1).